## ATLANTA RAILWAY COMPANY *v.* RANDALL.

|117  165|
|Case 2|
|120  226|

It is the duty of a street-railway company to exercise extraordinary care for the safety of its passengers.   As an incident to this obligation, where, in compliance with a city ordinance, street-cars are brought to a full stop just before reaching a crossing of tracks, and it is customary on such occasions to stop long enough for passengers to get on and off without giving any signal therefor, it is the duty of the proper servant of the company to exercise extraordinary diligence, before signaling the car ahead, to ascertain if any passengers desire to alight from the car, and, if so, to give such passengers a reasonable opportunity to alight in safety.

Argued January 23, — Decided February 10, 1903.

Action for damages.   Before Judge Reid.   City court of Atlanta.   May 17, 1902.

*Payne & Tye,* for plaintiff in error.

*Westmoreland Brothers,* contra.

CANDLER, J.   Mrs. Randall obtained a verdict against the street-railroad company for damages growing out of personal injuries received by being thrown from one of its cars as she was in the act of alighting therefrom.   The company made a motion for a new trial, which was overruled, and it excepted.   In our opinion the point dealt with in the headnote is the only one raised by the motion which it is necessary to discuss in this opinion.   It seems that the plaintiff was a passenger on one of the defendant's cars, which she had boarded to go to her home.   The car was very much crowded, and passengers were standing in the aisle and on the rear platform.   At the corner where she wished to alight, the track of the line on which she was riding crossed another track, and by

municipal ordinance of the City of Atlanta, as well as the rules of the company, motormen were required to bring their cars to a full stop before crossing the track of another line. The defendant's conductor testified: "When this car stopped at this crossing, it was a regular stop. People get on and off without giving a signal. Don't give any signal to stop there, because you have to stop anyhow." As the car neared the plaintiff's corner, the conductor was in another part of the car. The plaintiff looked for him, but could not see him, and requested another passenger to ring the bell to stop the car. As to what followed the testimony of the various witnesses is conflicting, but there was evidence to support a finding that the conductor did not make any effort to ascertain whether or not any passengers wished to leave the car at that corner, and that after stopping the car the motorman did not wait a sufficiently long time for the plaintiff to alight in safety, but moved his car suddenly forward, throwing her to the ground as she was in the act of getting off, and inflicting the injuries on account of which she sued. Among the assignments of error in the motion for a new trial is one to the effect that the following portion of the charge of the court was erroneous: "If you believe that this was a crossing of tracks, and that under the practice and custom of the movement of those cars that cars stop at crossings, and, while being stopped, passengers get on and off without signal, then it was the duty of the conductor in charge of the car to ascertain for himself when the car stopped whether passengers wanted to get off or not; and if he could by extraordinary care have discovered who wanted to get off — whether they wanted to get off, that would be equivalent, so far as the discharge of his duty was concerned, to actual knowledge on the subject."

We see nothing objectionable in the charge which we have quoted. That it is the duty of a street-railroad company to exercise extraordinary diligence for the safety of its passengers is too well settled to need argument; and incident to this obligation is the rule, when cars are stopped for the purpose of discharging or taking on passengers, to give sufficient time for such passengers to get on or off in safety. It is true that the conductor can not be expected to wait indefinitely, when he does not know whether or not there is any one desirous of getting on or off the car; but it is also undeniably true that the duty rests upon him to take what

means are in his power to acquire that information for himself; and where the ascertaining of that fact involves the safety of the passengers on his car, the proper measure of diligence required of him under the law, to find out the wishes of his passengers, is the one laid down by the judge below in his charge. Especially is this so at places where passengers customarily get on and off cars without any signal, either from themselves to the conductor or from the conductor to the motorman; which the evidence shows was the case at the place where the plaintiff was injured.

This case is easily distinguishable from that of *Central of Georgia R. Co.* v. *Dorsey*, 106 *Ga.* 826, relied upon by counsel for the plaintiff in error, where it was held that while it is the duty of a conductor to ascertain before reaching a flag-station whether or not there is on board a passenger ticketed thereto, there is a corresponding duty upon the passenger who has purchased a ticket to such station, upon discovering that he has been overlooked by the conductor, to call the latter's attention to the fact and surrender his ticket, in order that the conductor may know the passenger's destination and have the train stopped for him to alight; and that the failure of a passenger to observe this duty is material in determining whether or not, in a given instance, carrying the passenger beyond his station was wholly attributable to the negligence of the railroad company, or whether the passenger, by exercising the proper diligence, could have avoided being carried beyond such station. That was a suit against a railroad company for carrying a female passenger beyond her station, and had in it no element of damage to the person, growing out of the negligent failure to give sufficient time for the passenger to alight at a station at which it had stopped. The question there dealt with was as to the diligence or negligence of the conductor in finding out if a passenger desires to alight at a place where it is not customary to stop at all, with reference to the contract of carriage; here, it is as to the diligence of the conductor in ascertaining if the passenger wishes to alight at a place where it is required by law to stop, with reference not so much to the contract of carriage as to the duty to exercise extraordinary diligence to provide for the safety of the passenger.

As indicated in the outset, the other grounds of the motion disclose no reason why a new trial should be granted. There was

no error in any of the charges complained of; the evidence, while conflicting, fully warranted the verdict, and the judgment of the court below will therefore be *Affirmed. By five Justices.*