29528. GEORGIA POWER COMPANY *v.* WEAVER.

DECIDED DECEMBER 2, 1942. REHEARING DENIED DECEMBER 18, 1942.

*MacDougald, Troutman & Arkwright, Dudley Cook,* for plaintiff in error. *William A. Thomas,* contra.

MACINTYRE, J. 1. There is a street-car track running down the middle of Moreland Avenue, and the center of Moreland Avenue is the county line between Fulton and DeKalb Counties, Georgia. At the place in question if a street car was on or running down this track it would be one half in Fulton County and one half in DeKalb County. When injured the plaintiff was on, or riding on, the street car which was as much in Fulton County as it was in DeKalb County. Thus if, per chance, an injury had been inflicted on the street car itself, while on such a county line, by an automobile running into it, either demolishing it in whole or in part, the suit could have been brought by the owner of the street car in either county, irrespectively of which side of the street car had been struck by the automobile. The street car would, for the purposes of the suit, be considered as an entity, and not as being divided into component parts such as doors, windows, wheels, etc. The injury, in legal contemplation, would have been to the street car as a whole, notwithstanding the injury might have been to one of its component parts, as the door, wheel, or the like; and the measure of damages would not be the value of the part of the street car located in the county where it was struck by the automobile, even though no other part of the street car was injured; yet the measure of damages would be the difference between the market value of the entire street car immediately before and immediately after the accident. Thus we think the street car should be treated as an entity, and where a person riding on the street car moving on the county line is negligently injured by it (and that of course means if he is injured by any of its component parts which go to make up the whole) he is injured by the street car as an entity; and any person riding on this thing we call a street car which is moving along the county line is, in contemplation of law, riding on the county line, irrespectively of which side of the street car he may be sitting on, and if negligently injured he can sue in either

county. And if a passenger who was riding on such a street car was injured by the door of the same, before he was given due time to pass entirely through the door, he would in contemplation of law still be on the street car as a passenger, and still be located, in contemplation of law, on the county line, and could sue in either county. And this would be true, as in the instant case, where the motorman operating the car was riding on the side of the car in Fulton County and the plaintiff was injured as he was leaving the door on the part of the car in DeKalb County. The superior court of Fulton County where the case was tried had jurisdiction.

2. The evidence showed that the plaintiff entered the street car and his fare was paid; that he was about seventy years old. The motorman testified as to the condition of the plaintiff when he entered the street car "that he could not move around very well" on account of old age or being sick. The plaintiff testified that he sat down in the car until it stopped; that he was getting off the car at the rear and did not see the motorman do anything to the door. "I was trying to take care in getting off the street car. Then the door slammed before I could turn loose. I state at that time I was *already standing on the ground*. I was holding the rod with my right hand. As to why it was, I say then I had stepped down and I was still holding on, the door closed before I could get set on the ground. As to if I was standing on the ground, I had just stepped down to the ground and about the time I stepped down the door slammed before I could turn the handle loose. I was just holding on the rod. *I had both feet on the ground.*" The plaintiff's arm remained caught in the rear door until the motorman opened the door.

The motorman testified that he did not see the plaintiff as he was descending the rear steps, nor at anytime thereafter, until a lady "hollered" to him that a man was caught in the door; that at the time of the accident the street car had gone to the end of the route and had stopped in order to make the return trip. Sills, a witness for the defendant, testified that he saw the plaintiff on the occasion in question, there with his arm caught in the door; that the plaintiff "stepped off of the street car and held his arm on the inside of the car, and stepped on down on the ground, and the door came up on his arm. As to if I would estimate the length of time after the man [plaintiff] got off the trolley and stood there

with his arm in the door, I could not say just how long. I imagine between three and five seconds. When he got off he did not step down and take his arm right out." The motorman and a witness, Evans, testified that they were familiar with the working of certain mechanical devices attached to the door, as the one in question, as well as the door itself, and that they were in proper working order.

1 Nellis on Street Railways (2d ed.), 609, § 305, says: "The duty resting upon a carrier involves the obligation to deliver its passenger safely at his desired destination, and that involves the duty of observing whether he has actually alighted before the car is started again." And still speaking of the duty resting on a carrier to a passenger, Nellis on this same page further says: "It is not a duty due to a person solely because he is in danger of being hurt, but it is a duty owed to a person whom the carrier has undertaken to deliver, and who was entitled to the delivery safely, by being allowed to alight without danger." In *Atlanta Railway Co.* v. *Randall*, 117 *Ga.* 165, 166 (43 S. E. 412), it was stated: "That it is the duty of a street-railroad company to exercise extraordinary diligence for the safety of its passengers is too well settled to need argument; and incident to this obligation is the rule, when cars are stopped for the purpose of discharging or taking on passengers, to give sufficient time for such passengers to get on or off in safety." In *McBride* v. *Georgia Railway & Electric Co.*, 125 *Ga.* 515, 516 (54 S. E. 674), it was held not error to charge the jury that "If the plaintiff boarded one of the cars of the defendant and paid her fare, under the law she became a passenger of the defendant, and the relation of passenger would exist from the time she boarded the car until she had reached the place of her destination and had been allowed a reasonable time and opportunity to alight from the car in safety; and that, during the continuance of such relation, the law imposed upon the company the duty of exercising for the protection of her person extraordinary care." Applying the evidence as it relates to this case, the rule of law is that the relationship of passenger and carrier continues until a person reaches his destination and has a reasonable opportunity and time to alight in safety. We think the trial judge was correct when, in his order overruling the motion for a new trial, he stated: "The evidence demanded a finding that at

the time of the alleged injury the plaintiff was a passenger of the defendant."

We recognize the rule of law, under the circumstances disclosed by the evidence here, that after a passenger leaves the street car and has a safe footing on the street the company's duty toward him is then one of only ordinary care; but this presupposes that the passenger has left the car and has obtained a secure footing on the street; that is to say, has completely alighted in safety. It is true in the instant case that the plaintiff had put his feet on the surface of the ground, but while he stood there, and before he had taken a step, and while he was still holding on to a rod attached to the car, put there for the purpose of assisting persons to alight, yet located on the inside of the door, the door closed, and, according to the witnesses for the plaintiff, it closed within three to five seconds. The undisputed testimony was that the plaintiff was injured in the very act of alighting, or so instantaneously after he touched the street that the catching of his arm in the door must be regarded as an incident of his descent from the car. We think the undisputed evidence showed that the relation of passenger and carrier was still intact, and thus the liability of the company was to be tested by whether it had exercised extraordinary care, and that the judge did not err in so holding as a matter of law. Whether the defendant exercised due care toward the plaintiff, a passenger, and whether the plaintiff, as a passenger, by ordinary care could have avoided the consequences caused by the defendant's negligence, if any, are entirely different questions. Code, § 105-603; *Georgia & Florida Railway* v. *Thigpen,* 141 *Ga.* 90, 93 (80 S. E. 626); *Mize* v. *Southern Railway Co.,* 15 *Ga. App.* 265 (82 S. E. 925); *Locke* v. *Ford,* 54 *Ga. App.* 322 (187 S. E. 715); *Jernigan* v. *Georgia Railway & Power Co.,* 31 *Ga. App.* 273 (120 S. E. 439).

3. Here the defendant by its answer alleged that it was not negligent, and sought to defeat recovery of all damages. There was nothing in the pleading indicating that the defendant's purpose was merely to defeat a recovery of part of the damages. The pleadings are the chart and compass by which the judge is requested by the parties to guide the case. The pleadings on which the parties went to trial made an issue of liability or nonliability. *Southern Railway Co.* v. *Coursey,* 115 *Ga.* 602, 606 (41 S. E.

1013). There was no request to charge on comparative negligence, and it was not reversible error not to charge thereon even though some phase of the evidence authorized it. If any phase of the evidence had authorized a charge on comparative negligence, and the plaintiff had specifically pleaded it, or had duly filed a proper written request for such charge, then if the judge had failed so to charge he would have done so at the peril of being reversed.

The rule is stated in *Donahoo* v. *Goldin,* 61 *Ga. App.* 841 (7 S. E. 2d, 820) that "The general denial of all the allegations in each of the paragraphs of the plaintiff's petition, which alleged that the defendant's negligence was the proximate cause of the injury, in effect included an assertion by the defendant of a complete defense; namely, that the plaintiff had not exercised ordinary care to avoid the consequences to herself of the defendant's negligence, if any. Thus, if there was any evidence to support this defense there was an issue raised both by the *pleadings* and the evidence." And it was held in that case that the judge should have charged, without request, that if the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, if any, he was not entitled to recover, this being a complete defense; but it was further held that the court did charge substantially this rule of the complete defense, and the case was affirmed notwithstanding the fact the court did not charge on comparative negligence, it not having been specifically pleaded and there having been no request to charge. The rule in the *Donahoo* case is applicable to a complete defense (nonliability) made by both a proper pleading and the evidence, and is not applicable here where the issue of partial liability (partial defense) was not properly made an issue by being *specifically pleaded,* and thus the issue of comparative negligence was made *only* by one phase of the evidence, and there was no written request to charge. Here the judge did not commit reversible error in failing to charge on comparative negligence. See *Lamon* v. *Perry,* 33 *Ga. App.* 248, 252 (125 S. E. 907); *Southern Railway Co.* v. *Hooper,* 110 *Ga.* 779 (36 S. E. 232); *Savannah Electric Co.* v. *Crawford,* 130 *Ga.* 421, 425 (60 S. E. 1056); *Southern Railway Co.* v. *Coursey,* 115 *Ga.* 602, 606 (41 S. E. 1013).

4. Here, where the direct evidence was not all one way, and where there were proved facts and circumstances which could be

658

taken as inconsistent with the direct positive testimony, the rule in *Frazier* v. *Georgia Railroad & Banking Co.,* 108 *Ga.* 807 (33 S. E. 996), as quoted and applied in *Slaton* v. *Atlanta Gas-Light Co.,* 62 *Ga. App.* 42 (7 S. E. 2d, 769), is not applicable. See *Langford* v. *Holton,* 187 *Ga.* 94, 102 (200 S. E. 243).

5. On the question whether the evidence authorized the verdict, the defendant lays great stress on that part of its evidence which brought out that it had a mechanical device or door on the car that made it impossible, when this device or door was working properly, not to give the plaintiff from three to five seconds after his feet had left the step, for him to safely alight, or it might be said, to complete his undertaking of alighting. Assuming that the company had such a device or door on the car and that it worked perfectly, we can not hold as a matter of law that the company could arbitrarily fix three to five seconds as a reasonable time for itself, its employees, or its mechanical devices, and require that an old and infirm person, leaving the car and holding onto a rod which was attached to the inside of the door and had been put there for such purpose, should, at his peril, extricate or remove his entire body from the door or mechanical device within that length of time. Where his footing was insecure, the most natural way for such a person to secure a firm footing on the ground was to hold the rod on the inside of the door until he could steady himself.

After careful consideration of all the evidence we think the verdict for $350 was authorized.

*Judgment affirmed.* *Sutton and Gardner, JJ., concur.*