30291, 30292. NIEUWSTRATEN *v.* ATLANTIC COAST LINE RAILROAD COMPANY; and *vice versa.*

DECIDED MARCH 17, 1944.

*Oliver, Oliver & Davis,* for plaintiff.

*Abrahams, Bouhan, Atkinson & Lawrence,* for defendant.

MacIntyre, J. 1. One of the issues in the case was whether the railroad company, on the day of the accident, knew that the plaintiff was using the particular railroad-track, or that he would be in the particular shed, for the purpose of putting out "range flags." The company contended that it had no notice or knowledge of this act. The plaintiff contended that an invitation had been given by the company to Captain Smedile for the employees of the engineering corps, of whom the plaintiff was one, to come on the company's property in order to erect "range flags" on the building. Under the evidence it appeared that permission had been given the engineer corps by the company to come on its property for the purpose of erecting a "range flag." This had been a long-standing custom. However, when the war began, the government employees were stopped so frequently that special permission was secured. The plaintiff testified, in part, that on the day of the accident, he went to the engineer's office and obtained "passes for me and my helpers." He also testified that he did not see the passes; nor were they produced on the trial. Davis, a witness for the defendant, testified: "I know the type of written permit given at the time to these people [referring to the plaintiff and his helpers]. This was the type that was given at the time. It is not customary to note on that the exact place one is going to work." The following general type pass was then introduced in evidence, to wit: "Atlantic Coast Line Railroad Company. Temporary Identification Pass. Name.. Residence.. Dept... Occupation.. Sig... This is a temporary pass and must be surrendered when the regular identification pass is issued. C. McD. Davis, Executive Vice-President." We do not think that the court committed reversible error in allowing this paper in evidence.

2. Special ground 2. The court charged the jury as follows: "Defendant says that it was not negligent there as alleged, nor in any respect, and says that if the man was injured, that it was due to his own negligence, and his failure to exercise ordinary care and diligence, or the failure of Wright, the man who was there as his agent, to help him to exercise ordinary care and diligence, and

that therefore the defendant company is not liable." This charge was objected to on the ground that it was not authorized by the pleading or the evidence, and that it was argumentative. "The general denial of all the allegations in each of the paragraphs of the plaintiff's petition, which alleged that the defendant's negligence was the proximate cause of the injury, in effect, included an assertion by the defendant of a complete defense; namely, that the plaintiff had not exercised ordinary care to avoid the consequences to herself of the defendant's negligence, if any. Thus, if there was any evidence to support this defense, there was an issue raised both by the *pleadings* and the evidence." *Georgia Power Co.* v. *Weaver,* 68 *Ga. App.* 652, 657 (23 S. E. 2d, 730). Moreover, the defendant in his answer stated, "For want of sufficient information defendant is neither able to admit nor deny the petitioner's agent was not attending to his duties." The plaintiff testified that Wright was his agent. Thus we think that the charge was authorized by both the pleading and the evidence, and was not argumentative; and that this ground was not meritorious.

3. In special ground 3, the plaintiff objects to the charge that a witness may be impeached by contradictory statements made by him as to matters relevant to his testimony and to the case, on the ground that no contradictory statements of an impeaching nature were introduced against the plaintiff. The plaintiff was asked if he did not tell Mr. Davis that, "I put a damn fool at the foot of the ladder and he did not notify me that the train was coming." The plaintiff said that he "did not say that—I did not discuss it with any one." Mr. Davis subsequently testified that the plaintiff did make this statement to him. We see no error in the judge charging on the law of impeachment of witnesses, as it related to contradictory statements.

4. The judge charged the jury, in part, as follows: "If you find, as contended by the plaintiff, that the defendant expressly invited him there and that the purpose of his visit was for the mutual benefit of both the defendant and the United States Government, then the plaintiff would be an invitee. If you find, on the other hand, the purpose of the plaintiff's visit was not for the mutual benefit of the United States Government and the defendant, but was solely for the benefit of the United States Government, then the defendant would not be an invitee, but merely a licensee.

This would be true, even though the plaintiff had been expressly invited by the defendant, provided the purpose of the visit was not for the mutual benefit of both the United States Government and the defendant. As I say, if it was not for the mutual benefit of both, then he would not be an invitee; he would be a mere licensee, and then the plaintiff could not recover, because he has made his case on the theory that his client was an invitee." The plaintiff contends in special ground 4 that this excerpt was error because "the same was not a correct charge of the law applicable to the work which the plaintiff was doing on the defendant's premises." This is a correct statement of the law as it applies to the pleading and one phase of the evidence. There is no merit to this special ground. *Crossgrove* v. *Atlantic Coast Line R. Co.*, 30 *Ga. App.* 462, 464 (118 S. E. 694) ; *Pries* v. *Atlanta Enterprises Inc.*, 66 *Ga. App.* 464 (17 S. E. 2d, 902).

5. Special ground 5. The court charged the jury in part as follows: "If you find he was not an invitee, he can not recover. If you find he was an invitee, then he may recover, provided the defendant was negligent in one or more of the ways alleged and such negligence was the proximate cause of the plaintiff's injuries and damage, and that the plaintiff himself, and the man whom he was using as his agent to watch for him, were in the exercise of ordinary care." The objection is that the statement "that the plaintiff himself, and the man whom he was using as his agent to watch for him, were in the exercise of ordinary care," was an expression of an opinion as to what had or had not been proved, and that it imputed to Wright a scope of agency beyond the scope covered by the pleading and the evidence. The plaintiff, in answer to direct questions, testified that he knew that he had placed himself in a position of peril when he ascended the ladder, after putting it upon the railroad track, and that he stationed Wright at the foot of the ladder, as his agent, to warn him of the approach of a train, if there should be one. And on other occasions he referred to Wright as his helper, who was to hand him up such tools as he needed in putting up the "range flags;" that Wright was also to watch for the approach of trains and to warn him (the plaintiff) if there were any. This associate, who bore the relationship of a third party to the defendant, but who was engaged in the joint enterprise with the plaintiff, was under the plaintiff's direct supervision and control, and his duties (so simply and accurately

stated by the plaintiff and Wright, and admitted by the defendant), at the time and place of the injury, were prescribed by the plaintiff. Thus, there could have been no misapprehension by the jury of what Wright's duties were at the time and the place of the injury. Both the plaintiff and Wright, the helper, or agent, or by whatever name you wish to denominate him, testified that Wright was to hand up the tools and to watch out for trains, and said in effect, that these were his duties at the time and place of the injury, irrespective of what name, general or special, might be given to them. Thus what his prescribed duties were on this occasion was conceded by both parties, and there was no reversible error "in charging the jury in accordance with admissions of both parties made in open court, on the trial of the case." *Morrison* v. *Cureton,* 139 *Ga.* 299 (77 S. E. 160); *Georgia, Florida & Alabama Ry. Co.* v. *Jernigan,* 128 *Ga.* 501 (57 S. E. 791); *Davis* v. *State,* 58 *Ga. App.* 440 (5) (198 S. E. 800); *Richards* v. *Smith,* 173 *Ga.* 422 (160 S. E. 608).

6. Special ground 6 is controlled by the ruling in the preceding division of this opinion.

7. The attack in special ground 7 on the quoted excerpt *is not* subject to the objection that it unduly emphasized the contentions of the defendant over the contentions of the plaintiff, or that it caused the jury to believe that the court was of the opinion that the plaintiff should not recover against the defendant.

8. Special ground 8. Here, as in *Bates* v. *State,* 18 *Ga. App.* 718 (9) (90 S. E. 481), it was not erroneous to fail to charge the converse where the instruction "carried with it the converse of the proposition." See in this connection, *Maughon* v. *State,* 9 *Ga. App.* 568 (71 S. E. 922).

9. The charge as a whole was not subject to the objection in special ground 9 that it was argumentative and unduly emphasized the contentions of the defendant.

10. The matter stated in special ground 10, which the plaintiff contends the court should have given in charge to the jury, was at most but an elaboration of the rules of law that had been given in charge already, and there being no written request, the failure so to charge was not reversible error.

11. The evidence authorized the verdict.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Gardner, J., concur.*