### 30213. LANE DRUG STORES INC. *v.* BROOKS.

DECIDED MARCH 17, 1944. ADHERED TO ON REHEARING APRIL 1, 1944.

*Jones, Powers, Williams & Dorsey,* for plaintiff in error.

*MacDougald, Troutman & Arkwright, Harllee Branch Jr., W. H. Schroder,* contra.

MacINTYRE, J. 1. This suit was brought by Mrs. R. W. Brooks against Lane Drug Company as the occupant, and Connally Realty Company as the owner, of the premises. At the conclusion of the evidence, both defendants moved for a directed verdict, and the motion of Connally Realty Company, the owner of the premises, was sustained on the purely legal ground that under the terms of its lease to Lane Drug Company, the latter had taken over complete possession and control of the premises, and had assumed full responsibility for maintaining the same in proper condition. The motion for a directed verdict in favor of Lane Drug Company was overruled, and the case was submitted to the jury on the question whether the latter was liable under the evidence adduced. The jury returned a verdict in favor of the plaintiff. Lane Drug Company's motion for a new trial was overruled, and it excepted.

The material allegations of the petition may be stated briefly as follows: (1) That there were defects in the entrance-way to the store occupied by the defendant Lane Drug Company, which rendered the same unsafe for use by the plaintiff and other persons lawfully upon the premises; (2) that the defendants had knowledge of the existence of these defects and permitted them to remain; (3) that the plaintiff, while lawfully upon the premises for the purpose of transacting business with Lane Drug Company, was injured as a result of said defects; and (4) that her injury was not due to her own failure to exercise ordinary care.

Lane Drug Company's vice-president testified that at the time the drug company leased the premises there was no alcove or recess at the entrance in question; but that the drug company decided to recess the doors so as to create the alcove, and did so with its own foreman and workmen; that the floor of the alcove was formerly a part of the floor of the store, and when the doors were moved back the flooring was left as it was; that at the time Lane Drug Company took possession of the premises he noticed the depression or hole in the surface of the floor at the point where the alcove was to be constructed, but decided not to do anything about it, but just to leave it as it was. As a consequence, the depression remained within six inches of the step-down, and between 1939 and the date of the plaintiff's injury, was gradually worn deeper and wider by persons walking in and out of the store. The manager of the store testified that he also had knowledge of the existence of the step-down, as well as of the depression, in advance of the date on which the plaintiff was injured.

It seems to us from the record that the only issue upon which there is a dispute is whether the plaintiff was injured as a proximate result of the defects in the entrance-way, or whether her injury was due to her own negligence, or to some other cause. The plaintiff, in her petition, alleged, and there was evidence from which the jury were authorized so to find, that her fall and injury occurred as follows: There was a step-up of three or four inches from the sidewalk to the alcove at the entrance to the store; that the plaintiff knew it was there; that she stepped up from the sidewalk to the alcove, and entered the store; that after making a purchase, she undertook to leave the premises through the main entrance fronting on Whitehall Street, one of the busiest thorough-

fares in the down-town shopping district of Atlanta; that this entrance consisted of two swinging doors with solid baseboards of wood and metal extending from the bottom of the door to a height of approximately eighteen inches, and with glass panels above; that the exit or right-hand door, through which she undertook to pass, was hung on hinges so that when pushed it would swing outward and over the floor of the recessed alcove approximately three feet deep (the width of the door being only one-half inch less than the depth of the alcove) ; that she placed her right hand upon the handle of this door, and stepping forward first with her right foot over the threshold, she pushed the door outward as far as possible; that due to the fact that numerous persons were standing in the alcove, she could not open the door completely, and was forced to step slightly to the left and forward with her left foot; that the step she made with her left foot was the first step she made after stepping outside and away from the door; that in making this step, her left heel sank down into a worn place and depression approximately in the center of the tile floor, the said depression and worn place being approximately eight inches wide from front to back, and thirteen inches long from left to right, and its sides sloping gradually from the edges to a maximum depth of approximately one-half inch; that the hole or depression was principally in a band of dark green tile, and the hole had worn completely through the tile and into a dark cement bed underneath, so that the hole was not distinguishable from the green tile surrounding it, except by a minute inspection; that the edge of the hole nearest the exit door was only three and one-half inches from the center line of the alcove, and only twenty-one inches from the threshold of the doors; that when opened, the right-hand door came within thirteen inches of the hole, so that a person taking a single step to the left and forward would easily step into the depression, or some portion of it; that when her heel went down into this depression she was thrown off balance, and she stepped forward quickly with her right foot in an effort to regain her equilibrium; that a short distance from this depression there was a curbing or step-down, which connected the alcove with the sidewalk, and the top surface of the alcove and curbing was approximately four inches above the level of the sidewalk; that this curbing was gray in color and indistinguishable from the gray side-

walk to one who was caught in an emergency and plunging forward, as the plaintiff was; that as a result of the similarity in color of the curb and sidewalk, the plaintiff was unable to tell just where the curbing ended, and consequently her right foot came down partly on the curbing and partly over it, throwing her violently to the sidewalk. The evidence authorized the jury to find further that the depression or declivity into which the plaintiff's left heel sank was not observable except on minute inspection, and not only the plaintiff but a number of other witnesses, including the defendant's own employees, testified that they had not observed the depression, although they had frequently walked in and out of the entrance-way prior to the plaintiff's injury, some of them having used the entrance-way several times daily for many years. The evidence authorized the jury to find also that in addition to numerous persons standing in the entrance in accordance with a custom well known to the defendant, the weather was dark and cloudy, which made it additionally difficult to detect the depression in the floor or the nearby step-down. The jury were authorized to find further that there was no light or other warning sign near the floor in the alcove to call attention to the depression and the step-down. The plaintiff testified in part, as follows: "As to whether I looked down at the floor to see where I was going—I don't walk looking down at my feet. I do look down sometimes ahead of me to see where I am going, just like other people, when I know there is something to step on or into or anything. Any public place, I just go along using this place . . I didn't keep my eyes down in front of me from then on because—isn't that a safe place to walk? I didn't expect to find anything in front of me to keep me from coming in or going out, so I didn't keep my eyes down in front. As to whether I do expect, as far as I am concerned, to look down once in a while—well, I did; I do look down once in a while." After the evidence had been concluded, the jury were permitted to inspect the premises, and thus had an opportunity to form their own conclusion as to the relationship of the evidence that they had already heard to the defects, if any, in the entrance.

On a former trial the plaintiff testified in part, as follows: "Question: 'You have already pointed out in your cross-examination by the attorney a few minutes ago that there appears to be

in this photograph (exhibit number 2) that I am now showing you a worn place on that platform and another one over there?' Answer: 'It looks like it to me on the photograph; I won't say they were there; when I was there I didn't see anything on the platform.' Question: 'Looking at this photograph, do you see any worn place there on that photograph, the same one that was presented to you a while ago?' Answer: 'I pointed out these two places.' Question: 'I am going to show you plaintiff's exhibit number 3; do you see any worn place on that, did you see any place on that platform?' Answer: 'That looks like a worn place (indicating).' Question: 'Is there any more?' Answer: 'There may be more; I don't discover any more.' Question: 'If there were people constantly walking it might make it look worn?' Answer: 'Pictures are very confusing to me.' Question: 'You have already testified in this case that your left heel got caught; take any of these pictures and show where there is a hole?' Answer 'My heel got caught; I didn't look for that hole.' Question: 'Look at the photograph and tell us what caught your foot, what it got caught on?' Answer: 'I caught my heel and fell down and that is all I know.' . . Question: 'Is there any hole in the platform there?' Answer: 'I could not tell you anything about that by looking at the picture; I just stepped into something that caught my heel. I was not expecting to see a hole.' Question: 'Where were you looking?' Answer: 'I was not looking down at my feet. I had my eyes on the door and pushed it.' Question: 'That is not a hole?' Answer: 'No.' Question: 'You can't show up any hole in the platform appearing in these photographs?' Answer: 'No, but there must be one there that I stepped in; I still say that.' Question: 'What is it you stepped in?' Answer: 'A depression in that tiling that would take my heel in enough to throw me off balance.' Question: 'You don't see it on the photograph?' Answer: 'No.'" On the present trial .the plaintiff testified in part: "You had asked me the question if that wasn't a depression in that tile there; couldn't I see it very plainly on this photograph that you showed me. I said, 'Yes, I see that little depression on the end of the curbing, but,' I said, 'that wasn't the hole that I stepped in.' I said that was not the hole that I stepped in at the end of the curbing. I said the hole that I stepped in was just the first step outside of the door. The

hole that I stepped in was not the hole at the end of the curbing. And you asked me if I would mark it. As to whether I have finished my explanation—well, I marked out the depression there because you asked me if I saw it; but I said I didn't know whether that was in front of Lane's Drug Store or not. I said, 'yes, I see that depression in this picture on the sidewalk, on the curbing, right at the sidewalk,' but it wasn't the hole that I stepped in."

The defendant exhibited to the plaintiff, and introduced in evidence, six pictures of the alcove in question. These pictures were referred to in the record as exhibits 1, 2, 3, 4, 5, and 7. All of the pictures, except exhibit 3, showed, as the most prominent defect, if any, a vertical crack on the floor, which is obvious at a casual glance. This crack, however, had nothing to do' with the plaintiff's fall. On the other hand, so far as number 3 is concerned, if there is a portrayal of the vertical crack, so prominent in all the other pictures above referred to, it is so dim that we could not state positively that it appears in this picture, and if we were asked to state, by merely looking at said picture, and having never seen the alcove, whether it showed any depression or depressions in the floor, we could not answer positively that the picture so showed. Nevertheless, the uncontradicted evidence shows that there was a depression therein. Thus, where the witness is not present, and pictures are taken at different distances, angles, elevations, and in different lights, they may be confusing if, from the picture alone, the witness is required to identify objects, their colors, their distances apart, and their relative position. And it appears from the record that the plaintiff, on a former trial, and on this trial, testified that "pictures are very confusing to me."

The pictures exhibited to the plaintiff for identification, as mentioned above, had only the general appearance of a drug store, and showed nothing which so characterized them as to require the plaintiff, even though she had frequently entered the store through the entrance in question, to identify them as pictures of the front of the particular Lane Drug Store, where the alleged injury occurred. However, when her attention was called to the fact that on a former trial she had made a cross-mark with pen and ink on one of the pictures, she then testified that she had made this cross-mark on the picture in the former trial as indicating the place where she stepped into the alcove as she entered the store; that

she had put this cross-mark there as indicating that the *picture* showed a worn place or a hole in the alcove, and *not* that there was such a hole in the alcove; that she had never testified that she had seen the hole in the alcove; that she did not, on cross-examination on the former trial, point out any such hole or worn place other than stating that it looked like the picture showed a depression where she had made this cross-mark; that she had never seen the hole or depression, which caused her to fall, or any other hole or depression in the alcove; that when the heel of her shoe sank into it, she began to fall, and finally fell to the sidewalk, as described above; that she was hurt too badly to look for the depression, and had never been back to the alcove to see it. It should be noted, that in the excerpt last above quoted and here under consideration, the plaintiff was not testifying to what she in fact saw in the alcove, but merely what objects she could detect in the pictures exhibited to her. We do not think, as a matter of law, the jury was required to find that her testimony was vague or equivocal, as it related to the pictures. After all, the liability of the defendant depends upon whether the hole in question was in the floor of the alcove—not whether there was such a hole visible in the picture. There is no dispute but that there was a hole thirteen inches long, eight inches wide, and half an inch deep, in the floor of the alcove, and the jury were authorized from the evidence, and from their inspection of the premises, to find that this hole, or depression, was the one she stepped into, and the existence of which (irrespective of any other hole or depression) was the proximate cause of her injury.

A duty rests upon the occupier of land to exercise ordinary care to keep the premises safe for persons coming thereon by his invitation. Code, § 105-401. The invitee, in coming upon the land, may rely upon the discharge of this duty by the person occupying the land and in control of it, and therefore is not necessarily, and as a matter of law, guilty of negligence in failing to discover the existence of a patent defect in the premises which renders it unsafe for persons coming upon the premises. If the defect, though patent, is not of such a nature and character as necessarily to be seen in the exercise of ordinary care by a person coming upon the premises, and who has the right to rely upon the duty of the occupier of the premises to keep the premises safe, as where the

defect is such as is here alleged, an invitee coming upon the premises and using the alcove as a walkway, who, without observing the defect, is tripped by it and injured, is not, as a matter of law, guilty of negligence in not observing the defect in the walk. The jury was authorized to find that the occupier of the premises was guilty of negligence in knowingly maintaining the premises in the described condition. *Rogers* v. *Sears, Roebuck & Co.*, 45 *Ga. App.* 772 (166 S. E. 64). While the case is close on the evidence, yet, "this court, by the constitutional amendment creating it, is limited in jurisdiction to the correction of errors of law alone, and therefore has no power to grant a new trial on the ground that the verdict is strongly contrary to the weight of evidence, if there is any evidence at all to support it." *Adams* v. *Elbert County*, 24 *Ga. App.* 176 (2) (100 S. E. 232). Here the question of negligence, including contributory negligence, and what negligence constituted the proximate cause of the injury complained of, are questions for the jury, and we can not say that the evidence did not authorize the verdict.

One of the cases strongly relied on by the defendant is *McCrory Stores Corporation* v. *Ahern*, 65 *Ga. App.* 334 (15 S. E. 2d, 797). In that case the complaint was one of negligent maintenance, and the defendant had no actual knowledge of the alleged defective condition of the steps. The alleged defects were "merely three dark streaks running along the edge of each step, and flush with the surface thereof," and in order for the defendant to discover the ridges, it would have been necessary for him "to stoop down and make a very close and careful examination by sighting along the surface of said steps to observe that said ridges rise in place above the surface of the steps." In that case it was said:' "When the defective condition is one of such character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect, if any, was so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happened which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law." But in the same case this court quoted with approval from 4 Shearman

and Redfield on Negligence, (rev. ed.) 1820, 1822, § 797, as follows: "There are, of course, many stairway cases involving honest claims. Some of them are based upon dangerous construction, far more upon *negligent maintenance* . . *Negligent maintenance* may involve a great variety of defects; a broken tread, a hole in the tread, defective metal covering, debris, snow and ice, torn carpet, and the like. But the defective step must be identified with the plaintiff's fall, and *notice* of the defective condition must be brought home to the party sought to be charged." (Italics ours.) We think the instant case comes under the latter rule, for here the hole was in the tread of the alcove, and the defendant admitted that he had had knowledge of it for several years.

Special grounds 1, 2, and 3 are elaborations of the general grounds and are controlled by what has been said, that is, adversely to the defendant.

2. Special ground 4. The defendant requested the court to give the following charge: "I charge you, gentlemen of the jury, that the testimony of a party who offers himself in his own behalf is to be construed most strongly against him when it is vague or equivocal, and unless there be other evidence tending to establish his right to recovery, such party is not entitled to a finding in his favor, if that version of his testimony most unfavorable to him shows that the verdict should be against him." We do not think that the trial judge erred when he determined that the rule sought to be invoked in the request to charge was not applicable. We think that if there were any discrepancies or contradictions in the testimony of the plaintiff as to her identification of any of the pictures, the objects that she could or could not detect thereon, or the objects which she stated that she did or did not detect on them, such discrepancies or contradictions were due to confusion, and were not so vague or equivocal as to bring them within the meaning of the rule. The judge, however, did charge the general rule of law for the guidance of the jury in determining the credibility of the witnesses. And when the evidence is viewed as a whole, we do not think that the judge erred in determining that the rule sought to be invoked in the request still was not applicable. See, in this connection, *Charleston & W. C. Ry. Co.* v. *Thompson,* 13 *Ga. App.* 528 (2) (80 S. E. 1097).

3. Special ground 5. The defendant requested the court to

charge as follows: "I charge you that where a plaintiff's right to recover depends on the establishment of a particular fact, and the only proof offered for that purpose is circumstantial evidence from which the existence of such fact might be inferred, but which does not demand a finding to that effect; and by the positive and uncontradicted testimony of unimpeached witnesses, which is perfectly consistent with the circumstantial evidence relied on by the plaintiff, it is affirmatively shown that the fact contended for by the plaintiff does not exist, a recovery by the plaintiff is not lawful." It was not error to refuse to so charge, for here the direct evidence was not all one way; and where there are proved facts and circumstances, which can be taken as being inconsistent with the direct positive testimony, the rule here sought to be invoked is not applicable. *Georgia Power Co.* v. *Weaver*, 68 *Ga. App.* 652, 657 (23 S. E. 2d, 730).

4. Special ground 6. The defendant requested the court to charge as follows: "I charge, gentlemen of the jury, that the owner or occupier of a building is not the insurer of one who comes upon the premises at his invitation, express or implied; but I charge you that the owner or occupier is required only to exercise ordinary care to keep the premises and its approaches safe, and if you find that these defendants did exercise ordinary care to keep these premises and its approaches safe, then it will be your duty to return a verdict for the defendants, even though you might find that some defect existed in the premises or its approaches in one or more of the respects charged in the plaintiff's petition." The court did charge the following: "In other words, negligence is the absence of or the failure to exercise legally required care, and in this case the law required that the defendant, through its agents, servants and employees, be in the exercise of ordinary care in so far as the particulars of negligence charged are concerned. The definition of ordinary care is just that care which every prudent person would exercise under the same or similar circumstances." The request to charge merely embodied a general and abstract principle, and what the court charged was a general and abstract principle fully covering the instruction requested, and did not have the argumentative feature about the defendant not being an insurer. This ground is not meritorious. *Thompson* v. *Thompson*, 77 *Ga.* 692 (3 S. E. 261); *Werk* v. *Bunker Hill Mining Co.*, 193 *Ga.* 217,

239 (17 S. E. 2d, 825); *Brown* v. *State*, 195 *Ga.* 430 (24 S. E. 2d, 312).

5. Special ground 7. The defendant requested the court to charge as follows: "I charge you, gentlemen, that the test of ordinary care is not what could have been done to prevent a particular accident, but the test of ordinary care is what a reasonably prudent and careful person would have done under the circumstances to maintain the premises and its approaches in a safe condition." This contains only an abstract principle of law. We think that the charge of the court, as indicated in the preceding division of this opinion, embodied fully the same abstract principle of law that the request contained, and there was no error in the refusal to give the request in charge.

6. Special ground 8. The court refused to charge the following request of the defendant: "I charge you, gentlemen, that even though you should find that the premises occupied by defendant, Lane Drug Stores Inc., or its approaches, were defective in one or more of the respects charged in plaintiff's petition and that such defects were the proximate cause of the plaintiff's injury, nevertheless, if such defects were so slight, or of such a character that a prudent person, in the exercise of ordinary care, would not have reasonably anticipated danger through their existence, then it would be your duty to find a verdict for the defendants." The requested charge was in language no less general than that used by the court, but couched in an argumentative form; therefore, we think that this abstract principle in the request was fully and substantially covered by the abstract principle given in charge by the court. We do not think there is any merit in this ground.

Special ground 9. The defendant requested the court to charge as follows: "I charge you, gentlemen, that failure to guard against a remote possibility of accident or one which could not, in the exercise of ordinary care, be foreseen does not constitute negligence." It has been held by this court that "the court having clearly instructed the jury that the defendant would not be liable unless the death of the plaintiff's son was due to the defendant's negligence as alleged in the petition, it was not error to fail to instruct them that it excluded from the jury the consideration of whether the death of the plaintiff's son was due to an accident in which neither party was at fault." *Central of Georgia Ry. Co.* v.

*Mann,* 48 *Ga. App.* 668 (8) (173 S. E. 180). It was also said in *Southern Ry. Co.* v. *Sheffield,* 127 *Ga.* 569 (56 S. E. 838), "there was no error in refusing to give this request in charge to the jury; because it contained a statement as to what would not constitute negligence." Applying these rules of law to the request to charge, the court did not err in refusing to charge the same.

7. Special ground 10. The court refused the defendant's request to charge the following: "I charge you, gentlemen, that the mere fact that there is a slight difference between floor levels at the entrance or in different parts of a business building which the public is invited to enter does not of itself constitute negligence." This request contains a statement that maintaining the floor at a certain level would not constitute negligence. In order to avoid the invasion of the province of the jury, the court properly refused to state what would not constitute negligence. *Southern Ry. Co.* v. *Sheffield,* supra. The language of this request, while it may state a correct abtract rule of law in language appropriate to an appellate court decision, yet we think that it comes within the rule prohibiting a charge from being argumentative.

8. Special grounds 11 and 12 are not mentioned in the defendant's brief, and are considered as abandoned.

9. Special grounds 13, 14, and 15. The allowance, on cross-examination, over objection, of the evidence excepted to in grounds 13, 14, and 15 was not erroneous. "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." Code, § 38-1705. Since the scope of cross-examination rests in the sound discretion of the trial court, and since the cross-examination here complained of was directed specifically to testing the accuracy of an expert's opinion stated on direct-examination, the defendant's objections are not meritorious.                    *Judgment affirmed. Gardner, J., concurs.*

BROYLES, C. J., dissenting. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal. . . And he 'is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him.' *Southern Bank* v. *Goette,* 108 *Ga.* 796 (33 S. E. 974)." *Southern Railway Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294).

890

"When the defective condition [which caused the plaintiff's injury] is one of such character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect, if any, was so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happened which could have been guarded against by the exercise of extraordinary care and foresight. the question of the defendant's responsibility is one of law." *McCrory Stores Corporation* v. *Ahern*, 65 *Ga. App.* 334, 337 (supra).

Applying the above-quoted decisions to the facts of the instant case, I think that a verdict in favor of the defendant was demanded.