## CITY OF ROME *v.* BAKER.

Under the undisputed facts of this case the plaintiff was not entitled to a recovery, and it was therefore error to deny a new trial.

Argued March 24,—Decided April 22, 1899.

Action for damages. Before Judge Henry. Floyd superior court. July 1, 1898.

*C. W. Underwood* and *Halsted Smith*, for plaintiff in error.
*Fouche &. Fouche* and *J. Branham*, contra.

Cobb, J. Baker sued the City of Rome for damages alleged to have been received on account of personal injuries. The

jury returned a verdict in his favor, and the defendant's motion for a new trial having been overruled, it excepted. No error of law is alleged to have been committed during the progress of the trial, and the sole question for our consideration is whether or not the verdict is contrary to law because without evidence to support it. The facts on which the plaintiff's right to recover is based are, in substance, as follows: The City of Rome was engaged in a series of street-improvements, in the course of which the sidewalk at the corner of two intersecting streets was elevated from $3\frac{1}{2}$ to 4 feet above the street. At this corner, while the work was still in progress, some one had placed a plank, apparently sound, twelve inches wide, and from sixteen to twenty feet long. One end of the plank rested on the top of the wall of the sidewalk and the other end extended into the street. In order to get upon the crossing leading out from the corner in the direction in which the plank extended, pedestrians had either to walk down this plank or get down from the sidewalk into the street before reaching the corner and go around the plank. There was, however, a well-beaten path leading up to the plank, and while some few pedestrians used the street as the means of reaching the crossing, the great majority of them walked to the corner on the sidewalk and used the plank, which remained in place two or three weeks. There was "a nick" on one corner of the end of the plank resting on the street, which caused this corner to be elevated a little above the street. This defect was not patent to a casual observer, and made the plank liable to rock when used. With this exception the plank was perfectly sound. Plaintiff, who was a man about forty years of age, and who used a stick in walking on account of a slight stiffness in one of his legs, attempted to reach the crossing of the street by means of the plank. When he got about one third of the way down the plank it rocked with him and threw him off, and he thereby sustained severe injuries. He could have gotten into the street some fifty feet below the corner and have reached the crossing in this way, but there was no sign not to use the plank. There is no evidence to warrant the conclusion that any authorized agent of

the city placed the plank in the position above described, but there was evidence from which the jury could find that the overseer employed by the city to superintend the street work knew that the plank was in the position above described and that the same was being used by pedestrians. The work of improvement at the point where the plank was being used was incomplete at the time that the plaintiff was injured, and that such was the case clearly appears from the evidence. While the overseer was not then at work with his street hands at the corner where plaintiff fell, he was, according to plaintiff's own testimony, "not a great ways off, . . midway of the same block"; and the plaintiff says he saw him "with the hands doing the work on the sidewalk."

The jury having returned a verdict in favor of the plaintiff, which has been approved by the trial judge in his refusal to grant a new trial, and no complaint being made that any error of law was committed at the trial, it is incumbent upon us to determine from the facts stated above whether the defendant has been guilty of any negligence resulting in injury to the plaintiff; and if so, whether the plaintiff by the exercise of ordinary care could have avoided the consequences resulting to him from the negligent act of the defendant. It is not pretended that the plank on which the plaintiff attempted to walk was placed in the position in which he found it by the city authorities to be used by pedestrians going from the sidewalk to the street below. There is no evidence showing who placed the plank in the position to be so used. It is contended, however, that after it was so placed it was so continuously used by persons going along the sidewalk that a sufficient time had elapsed for a presumption to arise that the city authorities had knowledge that the plank, no matter by whom provided, was being constantly used by those who had occasion to use the crossing; and that, such use being known to the city authorities, the public had a right to presume that it had been placed there by the city to be used by pedestrians, and was therefore of a character suitable to be used for that purpose. If the city authorities would have a right, under any circumstances, to impose upon the public such a contrivance as a part of one

of the public thoroughfares of the city, then the fact that the public continuously used the same as a part of the sidewalk might raise a presumption that it had originally been provided by the city authorities for that purpose. If a jury could properly find that such a contrivance had become, either by the direct act of the city, or by the acquiesence of the city authorities, even temporarily a part of one of the public sidewalks of the city, and that a pedestrian would be in the exercise of ordinary care in accepting the invitation to use the same, then an injury resulting from its use to one who was otherwise free from fault would impose a liability upon the city. If, however, a person using such a contrivance would not be in the exercise of ordinary care and prudence, an injury resulting from such use would not give a right of action. The precise question presented, however, in the present record is: was a person of plaintiff's physical condition in the exercise of ordinary care and prudence in using this contrivance to go from the sidewalk to the street below, when there was no necessity upon him to use the same? That there was no necessity is manifest, as the evidence discloses that with little inconvenience it was possible to descend from the sidewalk a few feet below the corner where the plank was situated and reach the crossing in this way with perfect safety. If the city authorities had a right to provide such a contrivance to be used as a part of one of its sidewalks, then it was under a duty to furnish a plank free from defects; and if a person was injured in using the plank on account of a latent defect, then the city would be liable. If the city authorities had this right, there was evidence from which the jury could have inferred that the city knew, or ought to have known, that the public was treating the plank as a part of the sidewalk.

The city authorities have a right to lay out sidewalks, and when so laid out it is their duty to see that they are kept in a reasonably safe condition for travel. But in laying out a sidewalk and in declaring what is a sidewalk they are not given the arbitrary power to say that any contrivance which suits their whim or caprice is a sidewalk. If the contrivance declared to be a sidewalk is so manifestly unsuited for such use that it would

be obvious to any person of ordinary prudence that its use as such would be attended with some degree of risk and danger, then such a contrivance would not be a sidewalk within the meaning of the law which renders a city liable for failure to keep its sidewalks in a condition reasonably safe for travel. A plank twelve inches wide and sixteen to twenty feet long, loosely resting at one end upon the wall of a sidewalk three and one half to four feet high, is so manifestly unsuitable for use as a sidewalk in a populous city that it will not be so considered unless it is clear that no other course was open to the city authorities except to adopt such an unusual device. It can be safely held as a matter of law that such a contrivance can never become a sidewalk except from extreme necessity. The present case presents no such necessity. The risk attendant upon the use of such a contrivance being so clearly obvious to any person of ordinary intelligence, it will not be presumed that any such person would treat the same as a lawfully constructed sidewalk; nor, in the absence of positive proof that the same was erected by the authority of the city, will it be held that it was intended by the persons in charge of the city government, who are supposed to be men of at least ordinary intelligence, that such a contrivance should be treated by the public as a part of the sidewalk. There being no proof that the city authorities had anything to do with placing the plank at the place where the plaintiff used it, or that it was intended by them to be used by the public, and the evidence showing that the work of improvement was incomplete, and that only while the work was in this incomplete condition was the plank ever used, there would be no presumption arising from the use of the contrivance under such circumstances, no matter how long or how continuous, that the city authorities placed the plank in position to be used. While there was proof that it had been used by pedestrians for two or three weeks, and that it was defective and liable to turn when any one was walking upon it, and that this defect was not patent, the contrivance was of such a nature that any person of fair intelligence was bound to know it could not have been intended by the city authorities to be used as a sidewalk. Any person possessed of ordinary prudence was equally

bound to know that its use under any circumstances was attended with some risk and possible danger.   Such being true, it is apparent that a person possessing the qualities above referred to who used the same would take whatever risk of injury there might be resulting therefrom.   Especially is this true in the case of the plaintiff, who was laboring under a disability in the use of his lower limbs.   When he voluntarily chose to take a path which was to a person in his condition manifestly dangerous, when one which was free from danger was easily accessible to him, he was guilty of such negligence as precluded his right to recover damages for the injuries sustained by him in using such an obviously unsafe and unsuitable contrivance. See in this connection *Samples* v. *Atlanta*, 95 *Ga.* 110; *Alexander* v. *Rhodes*, 104 *Ga.* 807; *Daniel* v. *Forsyth*, 106 *Ga.* 568; Smith *v.* Cairo, 48 Ill. App. 166; Chicago *v.* Hogan, 59 Ill. App. 446.   *Judgment reversed.   All the Justices concurring.*