## 455. CENTRAL OF GEORGIA RAILWAY COMPANY *v.* FLOYD.

The evidence wholly fails to establish any negligence on the part of the railroad company, and the verdict was therefore unauthorized and a new trial should have been granted.

Action for damages, from city court of Newnan—Judge Freeman. March 30, 1907.

Argued June 28,—Decided December 20, 1907.

POWELL, J., being disqualified, Judge Felton, of the Macon circuit, was designated to preside.

· O. W. Floyd sued the Central of Georgia Railway Company for damages on account of injuries sustained in stepping from a depot platform. His evidence showed the following facts: On the night of October 31, 1904 (at which time he was living in the country seven miles from Senoia) he went to Senoia for the purpose of sending a telegram, in order to intercept his son, who had that day left his home. The railway company's agent at Senoia acted also as telegraph operator. The agent's office usually closed about 8 o'clock at night. When Floyd got to the station he went in the office, where the agent was, and informed him that he wanted to send a telegram about his son. The agent said he could send a telephone message quicker than a telegram, and (though not declining to accept the message) told him that it would be better to use the long distance telephone, if he wanted to stop his boy (who was on the train) at

the next station. Floyd, with the intention of following this advice, walked out from the waiting-room, where there was no light either at that time or when he came into the depot, and commenced feeling for the steps of the depot platform, and fell from the platform to the ground. The platform was 6 or 8 feet wide, and 30 or 40 feet long, with steps at the end, that Floyd used when he went into the depot. There was no guard-rail around the platform. He testified that he did not know where the steps were, and thought they were in front of where he was. He felt for them three times in trying to find them, and finally stepped a little too far and fell over. As a result of the fall, he broke his right arm in the wrist. He had lived in Senoia 15 years, and had been in and out of the depot many times while he was living in Senoia and since he had moved into the country. There was also testimony to the effect that the depot was reasonably suited for the purposes intended, and reasonably safe. It was a combination depot, used for passengers and the handling of freight. Two pairs of steps from the ground were used in going into and out of it. The platform across the eastern end of the depot, next to the waiting-rooms, was some 40 feet long, 8 feet wide, and from 3 to 4 feet high; at the northeast corner were steps about 4 or 5 feet long, and at the southeast corner were other steps, about 5 or 6 feet long; and between these steps there was a space of about 30 feet, with no steps and no guard-rail. The last train for the night had passed, and no other train was due or expected to arrive during the night, and no one was about the depot but the agent, who was doing some office work.

The trial resulted in a verdict in favor of the plaintiff. The defendant moved for a new trial, on the grounds that the verdict was contrary to evidence and without evidence to support it, and on numerous other grounds. The motion was overruled, and it excepted.

*Hall & Cleveland, W. C. Wright, J. E. Hall,* for plaintiff in error.
*W. L. Stallings, H. A. Hall,* contra.

FELTON, J.  O. W. Floyd brought suit in the city court of Newnan, alleging that he had received personal injuries by reason of stepping from the platform of the depot of the Central of Georgia Railway Company at Senoia on the night of October 31, 1904. His right to a recovery rests upon one of two propositions: either that the company was negligent in failing to erect guard-rails on the

edge of its platform, or that it was negligent in failing to have the platform lighted, at the time he was injured. The evidence shows, that the depot had been built many years; that it was reasonably suited for the purposes intended, and reasonably safe; that the railroad company had provided two pairs of steps for the use of people going into and coming out of the depot, of sufficient width and safety when used properly. Is it true that the railroad company is guilty of negligence in not fencing in its platform around a public depot, where both passengers and freight are loaded and unloaded, by having a guard-rail around the edge of the platform? Such precaution has never been exacted of any railway, and this requirement, upon this company, would be practically equivalent to insuring the safety of all persons, upon all occasions, by making it impossible to fall from or walk off the platform. Under such conditions it would be obviously impossible for the railroad company to receive and deliver its freight and transact the business of the company. The evidence shows in this case that this depot was constructed like all other depots in use by the railroad companies in Georgia, of this class and type. For this reason, a proper deduction from the evidence is that there was no negligence on the part of the company in failing to provide a guard-rail. Was there any negligence on the part of the railroad company in not having a light upon the platform or near it? The evidence shows, that the last train for the day had passed; that, so far as receiving or delivering freight was concerned, the day's work was over, and the business of the public with the company for the day had ended. While it is true that the evidence shows that the agent of the railroad company, who was the telegraph operator, did receive and transmit messages whenever he was in his office after the departure of the last train, still it was done as a convenience to the public, through the courtesy of the operator, rather than as a compliance on the part of the railroad company with a duty owed to the public to transmit messages. The public were not invited by the railroad company to come there for that purpose, at that time, to send messages; it was not the business of the railroad company to transmit messages, but to operate a railroad.

If it is assumed that the plaintiff in this case had a right to enter the depot for the purpose of sending a telegram or of as-

certaining whether he could send a telegram, there was sufficient light for him. to enter safely. According to his testimony, he entered by the steps, and from this fact alone was bound to know the location of the steps. In addition to entering at that time by the steps, he had lived for many years near the depot, and, according to his evidence, was familiar with the construction of the depot and the location of the steps; he was obliged to have known, when. he entered, that there was no light on the outside of the building or around it, and he therefore, in entering and departing from the depot without a light, took knowingly whatever risk there was in so doing. There was no duty upon the railroad company at that time, in any business it was then engaged in, to maintain a light upon or around its premises. The duty on the part of the railroad company of maintaining a light at its station must. be the result of some duty owed to the public, to enable the public to transact business with the railroad company with safety. There was no reason, in this case,. for the railroad company to anticipate the presence of this plaintiff upon its premises; there was no duty upon the company to provide him a light for the purpose of entering and departing from its premises. A careful consideration of all the testimony in behalf of the plaintiff shows that he knew the construction of the depot platform, the location of the steps, and also knew the fact that at the time he entered the depot there was no light. When he came out of the room where the conversation with the telegraph operator occurred, and where there was a light at the time, with knowledge of the fact that the platform was several feet above the ground, and that it was necessary to go down the steps in order to reach the ground safely, common prudence required that he should exercise ordinary care to preserve and protect himself from injury. Every one knows that to walk off a platform 3 or 4 feet from the ground, in the dark, is liable to result in serious injury; and while of course it is not to be presumed that the plaintiff intended to walk off the platform, still, when he attempted to leave the platform without a positive knowledge on his part that he would do so safely, the duty was on him to exercise diligence. The plaintiff in his testimony sought to meet this view by showing that he felt for the steps. A witness sitting in a buggy thirty feet away testified that he saw the plaintiff at that distance, feeling for the steps.

If this is true, there was some light to guide the plaintiff. In whatever light the evidence in the case is considered, the logical deduction is that the proximate cause of the plaintiff's injury was that he walked off the platform as a result of his failing to exercise that care and diligence which every prudent man is bound to exercise.

Under the facts presented in the record, there was no negligence on the part of the railway company that would authorize a recovery, and the verdict is consequently contrary to law and contrary to the evidence. The judgment is, therefore,　　　*Reversed.*