26369. BRIM *v.* HEALEY REAL ESTATE AND IMPROVEMENT COMPANY.

DECIDED SEPTEMBER 30, 1937.

484

*D. A. Pirkle Jr., Burress & Dillard,* for plaintiff.

*Sidney Smith, James N. Frazer,* for defendant.

GUERRY, J. Exception is taken to a judgment sustaining a general demurrer to this action for damages by Fay Brim against Healey Real Estate and Improvement Company. In the petition it is alleged that the defendant owns and maintains the William-Oliver Building as an office building; that on or about June 18, 1936, the plaintiff was employed in the office of the Southern Finance and Securities Company, a tenant of the defendant, occupying offices on the tenth floor of said building; that the defendant, in constructing and maintaining said building, placed and maintained a metal strip on the floor of the offices occupied by the plaintiff's employer, which strip was at the base of the doorway at the entrance from the hall into the offices where she worked; that said strip was placed entirely across said doorway; that it was approximately three feet long and two and a half inches wide, and had a height of an inch above the level of the floor, one fourth of said height being a square edge thereto, and then beveled, and said strip was not set in the floor deep enough to prevent its having a square perpendicular edge above the surface of the floor of one fourth of an inch; that the beveled part of said metal strip is very smooth, bright, and shiny, and as placed and maintained in said doorway is very deceptive in appearance and presents an optical illusion, and has the appearance, when not very closely examined, to begin at the floor; that said metal strip as placed and maintained does not appear to the casual observer to have a perpendicular or square edge at the floor, and said beveled part has the appearance of beginning at the floor level, but a minute examination of it will disclose that it has a square edge at the floor level that rises absolutely perpendicular from the floor level to a height of one fourth of an inch, and then the bevel begins; that it is usual, customary, and safe to place such strips so that the beveled part will begin at the floor level, in order that when one is walking over it, the beveled part will permit the foot to glide over it without tripping; that at the time the plaintiff was injured she was entering said offices from the hall of said building; that while walking into said offices her shoe struck said metal strip,

thereby causing her to trip and fall forward with much force in a twisted awkward position against the door and then to the floor; and that defendant was negligent: "(a) In constructing and also in maintaining the doorway to said offices in an unsafe condition. (b) In placing said metal strip across said doorway, raised above the floor, so that it would and did trip petitioner. (c) In that it maintained said doorway in a dangerous condition by leaving said raised metal strip across said doorway. (d) In that it did not place said metal strip on a level with the floor, so that it would not trip petitioner when walking over it. (e) In that it constructed said metal strip with a perpendicular edge above the floor, thereby rendering it more likely to trip petitioner when she used said doorway. (f) In that it placed and maintained across said doorway a metal strip which had a safe appearance but was unsafe, which strip was likely to and did trip petitioner and cause her to fall."

Does the petition set out a cause of action? We are of the opinion that it does not, for the reason that when properly construed it shows that the plaintiff, by the exercise of ordinary care and diligence, could have avoided the consequences to herself of the defendant's alleged negligence. Code, § 105-603. The petition discloses that the plaintiff was an employee of a tenant of the defendant. It is not alleged for what period of time she had been employed at the date of her alleged injury, nor is it alleged how long her employer had been a tenant of the defendant; but it is to be assumed (construing the petition most strongly against her) that both the employment and tenancy had existed for sometime, at least for such a period of time as to permit her, as an ordinary prudent and intelligent person, to thoroughly acquaint herself with the actual visible physical surroundings of her employment. It is alleged that the defendant, in constructing and maintaining the building, had placed in the doorway which served as the entrance from the hall of said building to the offices in which the plaintiff worked, as a threshold, a strip of metal; and that while it is customary to bevel off such a strip to the floor, in order that when one is walking over it the beveled part will permit the foot to glide over it without tripping, the defendant in this instance did not do so, but that said strip "was not set in the floor deep enough to prevent its having a square perpendicular edge

above the surface of the floor of one fourth of an inch;" and that the plaintiff, on entering the office on a certain day, struck her toe against this strip, causing her to fall and suffer described injuries. The plaintiff cautiously refrains from alleging that she did not actually know of the construction of the threshold which she alleges caused her injuries, but contents herself with an allegation "that the beveled part of said metal strip is very smooth, bright and shiny, and as placed and maintained in said doorway, is very deceptive in appearance and presents an optical illusion, and has the appearance, when not very closely examined, to begin at the floor; that said metal strip as placed and maintained does not appear to the casual observer to have a perpendicular or square edge at the floor, and said beveled part has the appearance of beginning at the floor level, but a minute examination of it will disclose that it has a square edge at the floor level that rises absolutely perpendicular from the floor level to a height of one fourth of an inch." Had the plaintiff been a stranger to the building at the time of her injury, an entirely different case would have been presented. We must presume that she had used this door and threshold many times in going to and from her work, and that in doing so, and from constant observation, had discovered that the threshold was not beveled off to the floor. That a "casual observation" did not disclose its true condition does not aid her, for she had made constant use of it; and certainly, in the absence of an allegation to the contrary, it must be held that its true condition was discoverable through daily use and observation by a person of ordinary prudence. We can readily conceive that false impressions may and can be created, but we also know that such condition is transitory unless it is the result of mental aberration. Daily and commonplace use of a doorway is sufficient to destroy any optical illusion in connection therewith. This being so, the plaintiff's injuries must be attributed to her own carelessness and inattentiveness. This court has recently remarked, in a similar action, that "in deciding a question of this character the fact is forced upon us, from the many cases we have examined, and the variety of judicial conclusions reached upon similar states of facts, that precedents are of little value, but each case must stand on its own facts." *Rothschild* v. *First National Bank*, 54 *Ga. App.* 486 (188 S. E. 301). However, in our investigation

and decision of this case we have found no case which serves as a precedent contrary to our ruling. In *Fuller* v. *Steyerman &c. Inc.*, 46 *Ga. App.* 830 (169 S. E. 508), the plaintiff was a customer in the store of the defendant, and in descending the steps was injured because of an alleged optical illusion that the bottom step had been reached before it was actually reached. There was nothing to show that the plaintiff had any previous acquaintance with the steps in question. The same may be said of *Tybee Amusement Co.* v. *Odom*, 51 *Ga. App.* 1 (179 S. E. 415); *Rogers* v. *Sears*, 45 *Ga. App.* 772 (166 S. E. 64); *Wynne* v. *Southern Bell Telephone Co.*, 159 *Ga.* 623 (126 S. E. 388). In the *Rothschild* case the alleged defect was not structural, as in the present case, but was caused from a gradual wearing of the floor and an alleged accumulation of a slippery substance over which defendant had applied wax. It was said: "In such case we think that the same rule which applies to a servant should apply to a tenant, in that he is under no duty to observe changes resulting from the gradual wear and tear of the premises until they become obvious to any careful man." It is apparent that this rule does not apply to purely structural conditions, such as the facts in the present case present. The petition set out no cause of action, and the judge properly sustained the general demurrer.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*