40055.  KREISS v. ALLATOONA LANDING, INC.

Decided September 12, 1963—Rehearing denied
October 8, 1963.

430

*Richardson & Chenggis, George Chenggis,* for plaintiff in error. *Hurt, Baird & Peek, J. Corbett Peek, Jr., Benjamin B. Blackburn III, Charles D. Hurt,* contra.

RUSSELL, Judge. ■ "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." *Code* § 105-401. This Code section may have application in a landlord-tenant situation where the landlord does not fully part with the right of possession. *Augusta-Aiken R. &c. Corp. v. Hafer,* 21 Ga. App. 246 (1) (94 SE 252). The plaintiff was an invitee on facilities provided by the defendant as a means of egress and ingress between the shore and the rented dock slips where boats were moored. From the pleadings, depositions, and affidavit, it appears that the plaintiff was injured because in the course of its repairs and renovations of these docks the defendant lined up a main floating dock with an auxiliary catwalk 42 inches wide, leaving a 4-inch space between the two, at a point where there had previously been an apron rounding out the angle of two intersecting dock areas, and had also disconnected the lights from this portion of the dock so that persons walking on the area at night would not be on notice, so far as appears from the facts stated here, of any difference between the structures. One

maintaining a defective footway, walkway, or excavation on the premises through which another falls may be held guilty of actionable negligence unless it appears for other reasons that the plaintiff cannot recover. *Southern R. Co. v. Howard,* 9 Ga. App. 264 (70 SE 1124); *Central of Ga. R. Co. v. Ledbetter,* 46 Ga. App. 500 (168 SE 81); *Gray v. Watson,* 54 Ga. App. 885 (189 SE 616); *Atlanta Life Ins. Co. v. Rogers,* 57 Ga. App. 785 (196 SE 239). The facts set out present a jury question as to negligence on the part of the defendant in failing to close or warn patrons against the hole between the dock section and catwalk at the point where the apron or flange between the intersecting dock sections had previously been located.

■ ■ It is undisputed that the plaintiff did not know of the defect in the dock caused by the defendant's negligence, and it is undisputed that a person walking in the darkness as she was might, although in the exercise of ordinary care for her own safety, have failed to notice it unless the mere fact of walking in an unlighted area is in itself such lack of care as to preclude recovery. The defendant earnestly insists that this is the case, citing *Srochi v. Hightower,* 57 Ga. App. 322 (195 SE 323); *Hendricks v. Jones,* 28 Ga. App. 335 (111 SE 81); *Dacus v. Dickinson Trust Co.,* 65 Ga. App. 872 (16 SE2d 786); *Mattox v. Atlanta Enterprises,* 91 Ga. App. 847 (87 SE2d 432), and *Hardigree v. Housing Authority of the City of Atlanta,* 107 Ga. App. 406 (130 SE2d 275). These cases make an imposing argument in favor of a legal proposition which, carried to its ultimate conclusion, would result in an invariable holding that a defendant may be as negligent as he pleases regarding premises which he controls and, in the absence of some contractual obligation to the contrary, then insulate himself against the consequences of such negligence by also negligently failing to light the area, relying upon courts to hold that whatever happens to one injured in an unlighted area must be held to result proximately from the act of the injured party in entering it. We doubt that such a conclusion would be either just or tenable. Whatever may be the rule as to stairs and hallways, a dock area which is necessary to be traversed by persons who spend the evening visiting friends on shore facilities related to the defendant's enterprises, and who

must necessarily return to the boat to sleep, as the defendant knew this plaintiff and others would have to do, which area is ordinarily lighted by a permanent electric installation, may be so dangerous when unlit that the failure to provide light may be negligence in and of itself. Further, the lights which were removed here were the very ones surrounding the reconstruction of the docks, that is, they were the only illumination of areas made dangerous because of recent changes not in existence at the time the plaintiff's husband rented the dock slip. Failure to illuminate may not in and of itself be sufficient to charge the defendant with liability, but failure to illuminate *in connection with* defective or dangerous construction falls in a different category, and may be pleaded and proved both on the question of the defendant's overall negligence and of the plaintiff's duty to exercise ordinary care for her own safety. *Pilgreen v. Hanson*, 89 Ga. App. 703 (81 SE2d 18); *Sylvan Heights Apts. v. Tallon*, 100 Ga. App. 192 (110 SE2d 419).

This court cannot accept the premise that every person injured *while walking in darkness regardless of the attendant circumstances* has failed to exercise ordinary care for his own safety and thus is precluded by law from recovering for his injuries. In *White v. Thacker*, 89 Ga. App. 656, 661 (80 SE2d 699) it was held: "While mere failure to light a hallway which proximately results in injury is not negligence in the absence of special contract or statutory provisions, failure to light an area which the landlord has negligently left in bad repair may be considered on the question of whether, as charged in the petition, the landlord was negligent in failing to give warning of a known defect." Where such negligence exists, and as a result thereof the owner has failed to give warning of the danger to his invitee, it follows that such fact may be considered in submitting to the jury the question of whether the plaintiff has exercised ordinary care for her own safety. "It is a generally recognized rule at common law that a landlord does not owe any obligation or duty to provide stairways and hallways used in common by tenants with artificial lights *unless there is some unusual and dangerous condition existing which necessitates special warning to his tenants.*" Miller-Dupont, Inc. v. Service, 120 Colo. 131 (208 P2d 87) and

authorities there listed; also, Landes v. Barone, 127 NYS2d 112, aff. 307 NY 867 (122 NE2d 750); Hirschler v. Briarcliff Mgt. Corp., 89 NYS2d 744, aff. 300 NY 680 (91 NE2d 331); May v. Hexter, 226 SW2d 383. Another rule stated in 25 ALR2d, Anno., 496, 505, is that applicable to cases where personal injury results to one using an unlighted portion of the property under situations where the landlord assumed voluntarily the obligation of lighting, the obligation existed at the time of the creation of the tenancy, and no notice of discontinuance was given. See, in addition to cases there listed, Ballou v. Jewett City Sav. Bk., 128 Conn. 527 (24 A2d 260); McDonald v. Yogel, 329 Mass. 492 (109 NE2d 136); Triggiani v. Olive Oil Soap Co., 12 N.J. Super. 227 (79 A2d 471). Neither this court nor the Supreme Court has heretofore dealt specifically with the exception to the common law rule of liability under these circumstances, and we do not believe it was ever intended to be held that a landlord, after furnishing lights over an area necessary to be traversed in order to reach a leased space, where common knowledge suggests that the area in the absence of lights would make the dock or passage so inherently hazardous that tenants would be hesitant to rent the facility unless lights were provided, may turn out these lights and at the same time create additional hazards *the extent of which is unknown to the plaintiff*, and then defend against a plaintiff injured by the *new* hazard on the ground that her negligence in facing a new and unknown peril insulates it from its own negligence in simultaneously creating and concealing the hazard. The common law rule is a harsh one; if we are to follow it we must at the very least recognize the common law exceptions. And this is all the more true where, as here, some of the lights which the landlord customarily maintained on the dock (those near the shore at the point where the plaintiff entered) were still burning, and the lights which were disconnected were the very ones which might have revealed the extent of the repairs and changes being made at the far end of the main walkway leading back to the boats.

In the opinion of the majority of this court, the dissent properly indicates the applicable yardstick—"volenti non fit injuria"—but improperly applies it. No one contends that Mrs. Kreiss

knew the protecting apron had been removed from the inner dock corner and a catwalk substituted so as to leave a four-inch crack. No one contends that when she testified she was "very familiar with the landing" she meant the landing in its state of temporary repair. On the contrary, she meant the landing *before* the apron guard was removed. No one contends that she knew, when she arrived that afternoon, that she would find the dock torn up—the letter received by patrons not only failed to state what renovations were intended, but even when they were to be initiated. No one contends that a person traversing the dock area only twice (her attention being called to the danger of the unguarded area where the dock had been moved from the left of the "T") would necessarily have noticed the small crack on the opposite side of the dock, or that she did in fact notice it, or that for any other reason she would anticipate this hazard. Her testimony was that, because she knew of the danger on the outside dock area, she walked over what she thought was the apron because it was safer. This is a far cry from *Bridger v. Gresham*, 111 Ga. 814 (35 SE 677), where the plaintiff, either a trespasser as alleged in the answer in that case or at best a licensee, entered a hotel closed to the general public, and, after questioning an unidentified "guest" or "special friend" of the owner voluntarily undertook to seek out somebody in charge for the purpose of making a sale and was injured while prowling through a darkened veranda and falling down a flight of steps. It has nothing in common with *Hardigree v. Housing Authority of the City of Atlanta*, 107 Ga. App. 406, supra, where the only negligence alleged against the landlord was failure to provide lights. And in *Mattox v. Atlanta Enterprises*, 91 Ga. App. 847, supra, the holding was that the plaintiff was "aware she could not safely descend" the staircase. In *Floyd v. City of Albany*, 105 Ga. App. 31 (123 SE2d 446), Judge Hall held that the plaintiff's alleged contributory negligence in falling over a pair of scales on a public sidewalk in broad daylight was a jury question. Had the same accident occurred at night we do not apprehend that the darkness would *per se* have insulated the defendant from all negligence less than wilful misconduct, and the same is true of many other cases decided by this court and the

Supreme Court. The language in some of the opinions is broad, but neither court has ever laid down the blanket rule that because an injury happens in darkness there can be no recovery. Each negligence case must rest on its own facts. "A judgment upon a similar state of facts is binding, but the argument of a judge, pronouncing an opinion upon a different state of facts, however much the argument may appear to fit the facts of the case being considered, is not binding as a decision." *Wright v. Lake,* 75 Ga. 219, 221. The court accordingly sees no necessity to overrule the long line of decisions cited in the dissenting opinion, but does, insofar as any of them may lead to the conclusion that a plaintiff is *under all circumstances* barred from recovery because the defendant's negligence was concealed by darkness, disapprove any language therein which may lead to such conclusion.

(b) But it is further contended that the plaintiff was chargeable with knowledge of the open area between the dock and catwalk so as to preclude her recovery for the reason that she had on the afternoon in question twice traversed the area without incident, once in broad daylight going to the boat and again at dusk when she returned to shore to visit friends. In *Firestone Service Stores v. Gillen,* 58 Ga. App. 782, 787 (199 SE 853), a "semi-darkness" case, the court held: "It affirmatively appearing from the petition that the defendant had ascended the stairway once only, and a few minutes afterward, for the first time, descended the same (no structural change having been made in the stairway between the time of ascent and the time of descent), we cannot say under these circumstances that a conclusion, as a matter of law, is demanded that the plaintiff should have had a full appreciation of the danger, and that in the exercise of ordinary care she should have avoided the injury to herself. This, we think, is a question for the jury." The mere fact that one has been in the area before will not preclude him from recovery for injuries received from defective premises unless his failure to observe the defect amounts to a lack of that care which an ordinarily prudent person would exercise under the circumstances. "Daily and commonplace use" may raise the presumption of knowledge, or constructive knowledge, as a matter of law. *Brim v. Healey Real*

*Estate & Imp. Co.*, 56 Ga. App. 483 (193 SE 84). "That a plaintiff is guilty of ordinary negligence will not bar recovery where it precedes any duty on his part to discover and avoid the negligence of the defendant, but it will bar recovery where it appears that it is the sole proximate cause of injury, or where by the exercise of ordinary care he might have avoided the defendant's negligence after it became apparent to him, or where by the exercise of such care he might have detected negligence on the part of the defendant which, had it been detected, could by ordinary care have been avoided. Negligence of the plaintiff not falling into one of these categories which concurs with negligence of the defendant in proximately causing the injury, but which does not equal or exceed the negligence of the defendant, goes in mitigation but not in bar of the recovery." *Conner v. Downs,* 94 Ga. App. 482 (2) (95 SE2d 393); *F. E. Fortenberry & Sons v. Malmberg,* 97 Ga. App. 162 (102 SE2d 667).

Nor will the fact that the defect was patent (or would have been patent had there been sufficient illumination) in and of itself establish contributory negligence so as to bar recovery. "Where the owner or occupier of premises fails to exercise ordinary care in keeping reasonably safe such premises for the use of those who go upon them as invitees, and where such an invitee is injured by a patent defect in such premises of which the injured party has no actual knowledge it can not be held as a matter of law that such injured party was lacking in ordinary care in failing to observe the defect in time to avoid the injury." *Wynne v. Southern Bell Tel. &c. Co.,* 159 Ga. 624 (4) (126 SE 388). In that case the plaintiff fell and was injured by catching the heel of her shoe in a crack running along and parallel to step runners which were constructed with steel treads, each with an opening of approximately two inches at the back of the runner. The defect was obviously patent, since the crack was not concealed in any way. The plaintiff had obviously used the steps before, since it was alleged that these steps were the only access to the building, and that she was coming out of the building. The Supreme Court in the opinion, while acknowledging that it was dealing with a patent defect, nevertheless in reply to a certified question from this court stated that the questions of both the defendant's negligence

and the plaintiff's contributory negligence were matters addressed to the triors of fact and were not to be decided as a matter of law. "An invitee is not obliged to inspect the premises to discover latent defects nor even to observe all patent defects." *Misenhamer v. Pharr,* 99 Ga. App. 163 (107 SE2d 875). "If the defect, though patent, is not of such a nature and character as necessarily to be seen in the exercise of ordinary care by a person coming upon the premises, and who has the right to rely upon the duty of the occupier of the premises to keep the premises safe . . . an invitee coming upon the premises and using the alcove as a walkway, who, without observing the defect, is tripped by it and injured, is not, as a matter of law, guilty of negligence in not observing the defect in the walk." *Lane Drug Stores v. Brooks,* 70 Ga. App. 878, 884 (29 SE2d 716). See also *Wilson v. Pollard,* 62 Ga. App. 781 (10 SE2d 407) ; *Southern Bell Tel. &c. Co. v. Bailey,* 81 Ga. App. 20 (2) (57 SE 2d 837) ; *Lawrence v. Hayes,* 92 Ga. App. 778 (4) (90 SE2d 102) ; *Rogers v. Sears Roebuck,* 45 Ga. App. 772 (166 SE 64) ; *Williams v. Evans,* 50 Ga. App. 496 (178 SE 460). That which a plaintiff may not do without barring himself from recovery is to accept a risk so obvious that taking it amounts to failure to exercise ordinary care for his own safety, *Culbreath v. Kutz Co.,* 37 Ga. App. 425, 432 (140 SE 419), or recklessly to test an observed and clearly obvious peril, *Laseter v. Clark,* 54 Ga. App. 669 (1) (189 SE 265). This plaintiff had traversed this dock area only twice previously to her fall after the repairs had been initiated, once in broad daylight and again at dusk. She had noticed changes, and had noticed a peril in the dock area arising from the removal and rearrangement of a large section of dock which left open to the water a space which had previously been a walkway. When she returned to the boat on the night in question she found the area dark, although it was customarily lighted; she remembered the removal of the northern dock section and thought the walkway to the right was "still the way it was with the apron and I thought it would be safer to walk that way and I did." The four inch crack or hole in the walkway, although doubtless patent and obvious to one stepping over it in daylight would not be so at night, nor would it have been patent and obvious to the plaintiff during the afternoon if she had not actually stepped along or

over it on one of her previous trips. Nothing in the pleadings, affidavit and depositions demands a finding that the plaintiff knew of the defect, that it was such a defect as would necessarily be discovered by one traversing the area, or that she had such familiarity with the premises as to be chargeable with knowledge of it as a matter of law. There remains in the case a genuine issue as to material facts, both as to the negligence of the defendant and as to the exercise of ordinary care on the part of the plaintiff.

It follows that the trial court erred in granting the motion for summary judgment.

*Judgment reversed. Felton, C. J., Nichols, P. J., Bell, P. J., and Jordan, J., concur. Hall, J., concurs specially. Frankum and Eberhardt, JJ., dissent. Pannell, J., not participating.*

HALL, Judge, concurring specially. I concur with the judgment of the majority that the plaintiff, an invitee, is not precluded as a matter of law from recovering damages against the defendant by the mere fact that she walked in darkness. I am in agreement with my brother Eberhardt that some of the decisions of this court collected in his dissent do hold that "One who chooses to walk in the darkness assumes the risk of dangers attendant thereon and that he does not exercise ordinary care for his own safety."[1] I further agree with both him and Justice Quillian, that "We are bound to follow the precedents of this court" until they are overruled. However, I am of the opinion that the majority, while protesting that these cases are somewhat different on their facts, has in effect overruled them as to invitees[2] and as far as I am concerned I shall treat them in the future as being now overruled.

---

[1]*Hendricks v. Jones,* 28 Ga. App. 335 (111 SE 81) ; *Macon Savings Bank v. Geoghegan,* 48 Ga. App. 1 (171 SE 853) ; *Srochi v. Hightower,* 57 Ga. App. 322 (159 SE 323) ; *Dacus v. Dickinson Trust Co.,* 65 Ga. App. 872 (16 SE2d 786); *Mattox v. Atlanta Enterprises,* 91 Ga. App. 847 (87 SE2d 432) ; *Watson v. McCrory Stores,* 97 Ga. App. 516 (103 SE2d 648) ; *Braun v. Wright,* 100 Ga. App. 295 (3) (111 SE2d 100) ; *Malone v. Lombard Ponds, Inc.,* 105 Ga. App. 828 (125 SE2d 697) ; *Hardigree v. Housing Authority of the City of Atlanta,* 107 Ga. App. 406 (130 SE2d 275).

[2]Like Julia in Lord Byron's Don Juan who ". . . whispering, 'I will ne'er consent,'—consented."

I cannot completely agree with the major premise of the majority that "each negligence case must rest upon its own facts." To me this would mean we will just decide the result in each case, i.e., administer, rather than law, justice based upon our independent discretion in each negligence case before us. To follow this premise would subject the court to the charge that it is being too result-minded in its decisions. In a free democratic society there must be equality before the law for those who engage in comparable legal transactions and enterprises. In order to assure equality among our citizens and improve the predictability of appellate decisions there must be legal predicates uniformly applied to all negligence cases, until changed by proper authority, rather than *ad hoc* notions of what is right or wrong in a particular case. This is the classic common-law approach and when followed in daily transactions and as to prospective litigation each person can know where he or it stands.

Negligence law deals with human life and our civilization is rapidly changing. There will always be progress, and, the common law must move forward to keep pace with our advancing civilization. *American Broadcasting-Paramount Theatres v. Simpson*, 106 Ga. App. 230, 237-238 (126 SE2d 873). As each advance is made, there must be a corresponding re-examination. The desire for a well ordered society based on a common sense of fairness and justice has led our people and the courts that serve them to regard conduct involving an unreasonable risk of harm as antisocial conduct. This is the essence of negligence law. We have a duty in some situations to protect others against an *unreasonable* risk of harm; what is an unreasonable risk and what one must do or refrain from doing to discharge this duty depends on the relationship between the parties in any transaction. Negligence is exposing another to whom one owes a duty, or exposing one's self, to a foreseeable *unreasonable* probability of harm.

In the past the court's approach to the plaintiff's negligence has often been but a reflection of its attitude toward the reasonableness of the defendant's conduct, and the issue of the defendant's duty and the plaintiff's negligence have been confused. The court hereafter should painstakingly avoid such confusion and should

decide the issue of the negligence of each party according to the reasonableness of his conduct. There is indeed justification for further re-examination of the doctrine of liability for negligence in the light of present day thought and conditions. Today we are dependent on others for food, clothing and a multitude of other necessities and facilities of modern life. Those offering goods and services compete to induce consumers to come to their market places. Merchants should offer their goods and services to their invitees under conditions that are as safe as the ordinary man would make them. Invitees should have the right to reasonable safety in using offered services and facilities, and, at least in the absence of warning, to use the premises with the expectation that they are reasonably safe. When a proprietor offers his premises for the reception of the public or some segment of it, his duty to keep the premises reasonably safe for his invitees may include a duty to inspect and remove or warn of unreasonably dangerous conditions. Such a duty has been said to be based on the proprietor's superior opportunity to discover and guard against a dangerous condition as compared with the opportunity of his invitee. *Belk-Gallant Co. v. Cordell,* 107 Ga. App. 785, 788 (131 SE2d 575). An invitee should not be forced into the dilemma of either accepting the risks of unnecessarily dangerous services or doing without these services altogether; he simply cannot go about in life adequately guarding against dangers that occupiers of business property have unreasonably put up to him.

Under modern conditions, it might be said that there is generally no satisfactory justification for inadequate lighting in those parts of business premises which are frequented by the general public. But when darkness is a necessary condition in the use of a socially acceptable facility, such as a theatre which is normally offered and accepted for use in darkness, the darkness itself does not constitute an unreasonable risk. Perhaps no duty should be placed on proprietors of such facilities to protect patrons from dangers inherent in the darkness itself; but this should not alter the duty to keep the premises reasonably safe from other dangers present in the darkness. Hence no duty is breached nor negligence committed merely from maintenance or use of the premises in darkness, and no liability arises for injury to an

invitee caused solely by use of the premises in darkness. This is not to say that the invitee has been negligent in using the premises, but merely that no unreasonable risk was taken by either party; the cause of the injury was not anti-social conduct by either party and it is not compensable. However, the existence of a defect in darkened premises may indeed create an unreasonable risk to an invitee, who in using the premises without knowledge of such defect still takes no unreasonable risk and is not negligent, and should not be precluded from recovery for the proprietor's negligence. So in the present case I would not say as a matter of law that the plaintiff in walking on the dock in the darkness took a foreseeable unreasonable risk and was thereby negligent; or that findings by the jury that the defendant exposed the plaintiff invitee to an unreasonable risk and was negligent, and that the plaintiff took an unreasonable risk and was also negligent, would preclude any recovery.

The judgment in this case represents a new concept for darkness cases involving invitees in Georgia. As an example of natural transition in the law it is a laudatory step in the right direction. It is proper that courts from time to time revalue past concepts and decisions in the common law tradition. The judge's continual questioning and weighing of results is the creative and evolutionary force in the law, and without it there would not be growth toward the ideal of perfect justice. Transition to the application of new concepts is likely to follow numerous changes in the membership of a court. However, the task of revaluation should be performed always with candor and forthrightness.

Negligence law began in this State, and still persists in some jurisdictions, to allow a defendant, though a wrongdoer himself, to escape responsibility on account of the contributing unreasonable conduct of the plaintiff. The rule was called "contributory negligence," and it threw the whole risk on the negligent plaintiff, while it let the defendant, also a wrongdoer, go free. In other words, the plaintiff who was in any manner negligent was an outlaw deprived of the protection afforded him by other rules of law designed for his benefit. Georgia, like many of the States, has abolished the common law rule that contributory negligence

by a plaintiff prevents a recovery. *Macon & Western R. Co. v. Johnson*, 38 Ga. 409; *City of Ocilla v. Luke*, 28 Ga. App. 234 (110 SE 757). However, it could be argued that this principle still rules from its grave under the doctrine of "volenti non fit injuria" (assumption of risk) or the rule of "avoidable consequences." All of these rules are in essence an expression of the highly individualistic attitude of the common law, that the duty of self-protection rested primarily on each participant in most transactions.

The rule is in full force in Georgia that the plaintiff cannot recover if by ordinary care he could have avoided the consequences to himself of the defendant's negligence, which he was aware of or could reasonably have discovered (*Code* § 105-603), as is the rule that to voluntarily encounter known danger amounts to a failure to exercise ordinary care for one's own safety and bars recovery for another's negligence. E.g., *Moorman v. Williams*, 103 Ga. App. 726 (120 SE2d 312); *Underwood v. Atlanta & W. P. R. Co.*, 105 Ga. App. 340, 361 (124 SE2d 758); *Youngblood v. Henry C. Beck Co.*, 93 Ga. App. 451 (91 SE2d 796); *DeWinne v. Waldrep*, 101 Ga. App. 570 (114 SE2d 455); *Staples v. Brown*, 96 Ga. App. 176 (99 SE2d 526). Thus when both the defendant and the plaintiff are negligent, whether the plaintiff can recover under the comparative negligence rule, or is barred from recovery by the rule of avoidance of consequences or the rule of voluntarily encountering a known danger, depends on the character and time of plaintiff's negligence. I question whether this is fair. The common law contributory negligence rule was simple, but unfair. If the present rules are complex and difficult for judges, one can imagine their impact upon a jury when charged orally by a trial judge. We might ask, therefore, whether there is equality before the law under such complex rules which purport, when a plaintiff's negligence contributes to his injuries, in some circumstances to make a negligent defendant responsible for apportioned damages and in other circumstances to relieve the negligent defendant of all responsibility.

EBERHARDT, Judge, dissenting. A careful review of both the pleadings and the evidence submitted in connection with the motion for summary judgment impels me to dissent—not because of

any disagreement with the philosophy of the able opinion of the majority, but because I find cases in the reports of both this court and the Supreme Court which demand a different result. I have called these cases to the attention of the court, urging that they should be frankly met and dealt with. As I see it, that has not been done and só I here direct them to the attention of the bar. They may be wrong. If so, they ought to be overruled—and it ought not to be done *sub silentio*. They have an honorable ancestry and, as evidenced by their number and the many times they have been cited, have served faithfully and long. If they are to suffer the fate of Lidice[1] our cases should be afforded a respectful interment so that Shepard's may give appropriate notice in its obituary. If they are right they ought to be followed. If we are bound by them our duty is to follow them. Certainly they should be examined with care.

While it appears that a modernization of the floating dock facility on which Mrs. Kreiss and her husband rented a boat slip was in progress, it also appears that she was familiar with it and with the condition of the dock, walkway and the catwalk. They had rented the boat slip for some time and she testified that they had gone there every weekend during the summer months. The owner testified that he had sent out letters to the people who rented boat slips and who were customers of the facility informing them of the plans which were in progress. Mrs. Kreiss said that she had noticed the changes that were being made, and particularly on the very day she was hurt. It appears that the work had stopped on Friday afternoon and was not resumed until the following Monday. On the intervening Saturday about midafternoon she walked the route along the dock from the shore to the boat, and later in the afternoon, but in full daylight, she walked the very same route again from boat to shore. Nothing, at either time, prevented her from seeing the exact location of the catwalk with reference to the runway, in-

---

[1] The Czechoslovakian city that, with its entire population, was destroyed June 9-10, 1942, by the German army. While we know of no counterpart in modern history, see Joshua, Chapters 6-10, for an account of the annihilation of Ai, Debir, Eglon, Hebron, Jericho, Lachish, Libnah and Makkedah.

cluding the four-inch opening between them. She testified that she discussed something of the situation at the dock with her husband, particularly with reference to changes that were being made. Not only these facts, but her testimony that "We were familiar with the Allatoona landing—*very familiar with it*," leads inescapably to the conclusion that if there was a dangerous situation she knew of it, *Vaissiere v. J. B. Pound Hotel Co.*, 184 Ga. 72 (190 SE 354); *Ford v. S. A. Lynch Corp.*, 79 Ga. App. 481 (54 SE2d 320), and thus when she returned to the boat along the dock and walkway in the darkness that night she was testing a known and obvious peril, and in voluntarily doing so she took the risk of physical injury. *Youngblood v. Henry C. Beck Co.*, 93 Ga. App. 451 (91 SE2d 796); *Alexander v. Rhodes*, 104 Ga. 807 (30 SE 968); *City of Rome v. Baker*, 107 Ga. 347, 352 (33 SE 406). *Volenti non fit injuria.*

The plaintiff here, as every other individual, is presumed to be possessed of the ordinary human faculties and to have them in ordinary capacity. *Annis v. Georgia Power Co.*, 42 Ga. App. 754, 758 (157 SE 242). To the same effect, see *Davis v. Central R.*, 60 Ga. 329, 333; *Gardner v. State*, 81 Ga. 144 (4) (7 SE 144); *Holcombe v. State*, 5 Ga. App. 47 (4) (62 SE 647).

But conceding that for some reason she was not familiar with the situation, another equally compelling reason would bar her recovery. She testified that when she returned to the boat at about 11 p.m., *"You couldn't see in front of you where you were going. It was more or less a guess where you were."*

This court, in *Braun v. Wright*, 100 Ga. App. 295 (3) (111 SE2d 100), where a contractor failed to light the premises so as to reveal hazards in connection with the construction of a house, as a result of which a subcontractor who went there at night to do some work was injured when he stepped on an insecurely anchored plank over a ditch and fell, held: "If the failure of the contractor to furnish lights to reveal such hazards . . . amounts to a failure on his part to exercise ordinary care to prevent injury to the subcontractor, the latter is equally negligent in going on and over premises where it was to be reasonably expected perils and pitfalls incident to building activities exist and are concealed by the darkness. *Fricks v. Knox Corp.*, 84

Ga. App. 5, 10 (65 SE2d 423); *Bridger v. Gresham,* 111 Ga. 814 (35 SE 677). In such circumstances *one who chooses to walk in darkness does not exercise ordinary care for his own safety.* [Citations]." (Emphasis supplied.) And see *Baxley v. Williams Constr. Co.,* 98 Ga. App. 662 (5) (106 SE2d 799).

The Supreme Court, in *Bridger v. Gresham,* 111 Ga. 814 (35 SE 667), one of the cases cited and relied upon in *Braun,* dealt with a situation where the plaintiff went to the office of the defendant's hotel at night to offer berries for sale. A guest informed him that the proprietor was out but that his son, who might buy the berries, was in the kitchen or dining room. Going in search of the son, plaintiff went out a door leading from the office, which was lighted, to a veranda where there was no light, closing the door behind him. While walking along the veranda in the darkness he fell down a stairway and was injured. It was held that "irrespectively of the question of whether or not the defendant, relatively to the plaintiff, was bound to use ordinary care in keeping the premises safe, the granting of a nonsuit was proper, it being manifest that the plaintiff, by the exercise of ordinary care, could have avoided the injury."

In *Mattox v. Atlanta Enterprises,* 91 Ga. App. 847 (87 SE2d 432), it appears that the plaintiff was directed by an usher at a theatre to follow a stairway down to the ladies restroom, the stairway was dark and unlighted (it could have been lighted but ceiling lights were turned off), the carpet on the stairway had grease spots that were slick and slippery and had holes in it—all of these matters being within the knowledge of the defendant. Plaintiff alleged that she went "cautiously . . . forward down the stairs, feeling her way as she advanced," but that the heel of her shoe caught in the carpet and the other foot came in contact with a greasy spot causing her to fall and be injured. Holding the petition to set forth no cause of action this court said: "The averments of the petition . . . show that the plaintiff was aware that the stairway was 'dark,' and that she could not safely descend it; that, nevertheless she continued down the steps 'feeling her way as she advanced,' fell, and sustained . . . injuries. Under the rulings of *Hendricks v. Jones,* 28 Ga. App. 335 (111 SE 81); *Flournoy v. American Hat Mfg. Co.,* 21 Ga. App. 599

(94 SE 835); *Lebby v. Atlanta Realty Corp.*, 25 Ga. App. 369 (103 SE 433); *Avary v. Anderson*, 31 Ga. App. 402, 404 (120 SE 683); *Frierson v. Mutual Realty ·Co.*, 48 Ga. App. 839 (174 SE 144), we are constrained to hold that the danger was obvious to her, and by the exercise of ordinary care for her own safety, she could have avoided being injured. Therefore, she was precluded from recovery because of her own negligence. . . . [U]nder the ruling in *Dacus v. Dickinson Trust Co.*, 65 Ga. App. 872 (16 SE2d 786), *it was of no consequence whether the defendant was negligent in allowing the stairway to become defective, because the plaintiff was not in the exercise of ordinary care in proceeding through the darkness.*" (Emphasis supplied.)[2]

Nor does the fact that the plaintiff may have "proceeded with caution" aid her—though that does not appear from either the pleadings or the evidence here as it did in *Mattox*, supra, and in *Tuten v. Atlantic Coast Line R. Co.*, 4 Ga. App. 353 (61 SE 511) where plaintiff alleged that she had alighted from the train, gone into the waiting room until after the train departed, and then went out on the platform where (as here) it was so dark she "could not see her hand before her," endeavoring to find the steps leading to the street. In moving along the platform she alleged she was "sliding her feet before her" and when she came to what she thought to be the steps "eased one foot down to feel for the step"—then lost her balance, fell and was injured. A nonsuit was affirmed.

Only recently in *Hardigree v. Housing Authority of the City of Atlanta*, 107 Ga. App. 406, supra, a decision by Chief Judge Felton, the plaintiff, a tenant in an apartment house sought damages for injuries sustained when he got up at 4 a.m. to go to the bathroom down the hall. The hallway was dark because the defendant had failed to replace a burned out light bulb, and

---

[2]Judge Quillian, now Justice Quillian, the writer of *Mattox*, observed at p. 849: "Although this writer does not agree that the correct rule is stated in the decisions cited, and while other jurisdictions hold that it is a jury question as to whether or not it is negligence to walk down a strange dark stairway, *we are bound to follow the precedents of this court.*" (Emphasis supplied).

plaintiff missed the bathroom, falling headlong down the stairs. Holding that there was no duty on the part of the landlord to maintain lights or to illuminate passageways, porches and steps in the absence of a contractual obligation, or when so required by statute, the sustaining of a general demurrer was affirmed, and it was further asserted (p. 408) that "Even if it were true that there was a duty on the landlord to replace the burned-out light bulb, the plaintiff was aware of the danger existing and could have easily avoided the consequence . . . by the exercise of ordinary care."

Enough of detailing cases. Suffice it to direct attention to the following as cases in which recovery has been denied to plaintiffs who proceeded in the dark: *Watson v. McCrory Stores, Inc.,* 97 Ga. App. 516 (103 SE2d 648) (dimly lighted steps in a variety store); *Hopkins v. Barron,* 61 Ga. App. 168 (6 SE2d 96) (dark, unlighted lot); *Srochi v. Hightower,* 57 Ga. App. 322 (195 SE 323) (entrance steps to apartment house dark from burned-out light bulb or defective switch); *Maloof v. Blackmon,* 105 Ga. App. 207 (2) (124 SE2d 441) (unlighted porch and steps to apartment house); *Ogain v. Imperial Cafe, Inc.,* 25 Ga. App. 415 (103 SE 594) (dark portion of cafe where butter was on floor); *Castleberry v. Fox,* 29 Ga. App. 35 (113 SE 110) (banana peel on steps of unlighted stairway in hotel); *Sprague v. Atlanta Biltmore Hotel Co.,* 71 Ga. App. 849 (32 SE2d 534), *Macon Savings Bank v. Geoghegan,* 48 Ga. App. 1 (171 SE 853), *Peniston v. Newnan Hospital,* 40 Ga. App. 367 (149 SE 715), and *Smith v. Inman,* 32 Ga. App. 24 (122 SE 632) (elevator shaft); *Frierson v. Mutual Realty Co.,* 48 Ga. App. 839 (174 SE 144) (unlighted stairway to unlighted basement); *Hendricks v. Jones,* 28 Ga. App. 335 (111 SE 81) (insufficiently lighted stairway in hotel); *Flournoy v. American Hat Mfg. Co.,* 21 Ga. App. 599 (94 SE 835) (employee in manufacturing plant descending stairway dark because light out); *Central of Ga. R. Co. v. Floyd,* 3 Ga. App. 257 (59 SE 826) (unlighted station platform), and *Malone v. Lombard Ponds, Inc.,* 105 Ga. App. 828 (125 SE2d 697) (unlighted beach in resort area). Doubtless there are many others. Many of the judges presently on this court have either written or have concurred in some of these opinions.

It is not alleged and does not appear that the defendant here was under any contractual or statutory duty to light the dock, and it would thus appear that he was under no duty to do so. *White v. Thacker*, 89 Ga. App. 656, 658 (80 SE2d 699); *Maloof v. Blackmon*, 105 Ga. App. 207 (2), supra, and citations; *Hardigree v. Housing Authority of the City of Atlanta*, 107 Ga. App. 406, 408, supra, and citations.

Again I propose that if the assertions of this court that one who chooses to walk in the darkness assumes the risk of dangers attendant thereon and that he does not exercise ordinary care for his own safety in so doing are wrong, we should overrule them.[3] They should not be swept under the rug because, forsooth, the facts here are not identical with them, or even overruled *sub silentio*. "We [should] not attempt to absolve ourselves of responsibility for perpetuating the error of our decisions regarding cows by attempting to draw a line of distinction between the killing of cows and the killing of bulls." Justice O'Neill, dissenting in Taylor v. Allen, 151 La. 82, 119 (91 S 635). If the cases are right, they should be followed. The bar is entitled to know whether these decisions still have vitality and whether they may apply in similar situations with which their clients may be confronted.

Plaintiff alleges that the owner was negligent in failing to erect or provide guardrails, but this can not aid her case, not only because of the principle of *Dacus v. Dickinson Trust Co.*, 65 Ga. App. 872, supra, but for the further reason that the owner was under no duty to do so. He testified, and it is undisputed, that "There is no way to construct guardrails. You couldn't get in and out of the slip. It is not feasible." Certainly it is not to be required that the dock, walkway and catwalk be so encumbered as to make them unsuitable for the very use for which they were intended—and for which plaintiff and her husband rented the boat slip. A similar contention was disposed of by the Court of Civil Appeals of Texas in Osborne v. Loew's

---

[3]If they are overruled the question still remains, because the principle appears to be established in *Bridger v. Gresham*, 111 Ga. 814, supra, and perhaps in other decisions of the Supreme Court.

Houston Co., (Tex. Civ. App.) 120 SW2d 947, 950, where it was said: "There was no evidence that such a guardrail or protection was usually installed in theatres as a part of the general construction. Under the evidence, it would seem that a guardrail would have destroyed the use of the seats appellants were seeking. With a guardrail, how would a patron of the theatre have stepped from the aisle into the seats on the side of the aisle? Certainly there was no evidence that appellee, in constructing its theatre departed from the usual method of construction in this respect." To the same effect is McKelvy v. Capitol Amusement Co., (La.) 159 S 143, where the court asserted: "It would not be practicable to install guardrails along theatre aisles, as they would block access to the seats." And see, Johnson v. Matthews Moran Amusement Co., 264 Ore. 636 (102 P2d 703); *Central of Ga. R. Co. v. Floyd*, 3 Ga. App. 257, supra, and *Tuten v. A.C.L. R. Co.*, 4 Ga. App. 353, supra.

The defendant's motion for summary judgment was properly sustained. I would affirm.

I am authorized to say that Judge Frankum concurs in this dissent.